**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BECTON, DICKINSON & COMPANY AND C.R. BARD, INC., <br><br> Plaintiffs, <br> v. <br><br> MEDLINE INDUSTRIES, INC. <br><br> Defendant. | Civil Action No. 2:21-cv-12929-JMV-CLW <br><br> Honorable John Michael Vazquez <br> United States District Judge <br><br> Motion Day:  December 6, 2021 <br><br> **Oral Argument Requested** |

**DEFENDANT'S MEMORANDUM IN SUPPORT
<u>OF ITS MOTION TO DISMISS OR TRANSFER</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

    A.    Medline's Innovative Single-Layer Foley Catheter Kit Launches in 2009. ........... 3

    B.    Bard Responds with a Copycat Single-Layer Kit, and Medline Sues Bard for Patent Infringement. ............................................................................................... 3

    C.    The *Medline III* Court Sanctions Bard for Concealing its "SureStep 1.1" Attempt to Design Around Medline's Patents. ....................................................... 4

    D.    Bard Recalls Its SureStep 1.1 Foley Catheter Kit Based on Potential Infection Risk. ..................................................................................................................... 5

LEGAL STANDARDS ....................................................................................................... 6

    A.    Dismissal Under Fed. R. Civ. P. 12(b)(6) .............................................................. 6

    B.    Transfer Under 28 U.S.C. § 1404(a) ...................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.    The Amended Complaint Should Be Dismissed for Failure to State a Claim. ................... 7

    A.    Counts I-VI and VIII Should Be Dismissed Because Plaintiffs Fail to Plead Facts Plausibly Suggesting that Any Statements Caused Bard to Lose Any Customers, and Because the Alleged "False" Statements Are True. ...................... 7

            1.    The Amended Complaint Fails to Provide Facts Suggesting Any Medline Statements Deceived Any Customers to Plaintiffs' Detriment. ................................................................................................. 7

            2.    The Alleged Statements Concerning SureStep Supply, Bard's Copying and Infringement, or Infection Risk Are True. ........................... 8

            3.    False Advertising (Counts I-IV) .............................................................. 11

            4.    Trade Libel (Count V) ............................................................................... 13

            5.    Breach of Contract (Count VI). ................................................................ 14

            6.    Tortious Interference with Prospective Economic Advantage (Count VIII). ......................................................................................................... 15

i

B.     The Amended Complaint Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing (Count VII) Independent of the Breach of Contract Claim. ................................................................................ 16

II.    Alternatively, this Case Should Be Transferred to the Northern District of Illinois. ....... 18

A.    This Case Could Have Been Brought in the Northern District of Illinois. ........... 18

1.    The Illinois Court Has Personal Jurisdiction Over Medline. .................... 18

2.    Venue Is Proper In the Illinois Court. ....................................................... 18

B.    The Private Interest Factors Favor Transfer. ......................................................... 19

1.    Plaintiffs' Choice of Forum Carries Little Weight. ................................. 19

2.    Defendant's Forum Preference Favors Transfer. ...................................... 20

3.    Plaintiffs' Claims Arose in the Northern District of Illinois, Strongly Favoring Transfer to That Forum. ............................................................. 22

4.    The Convenience to the Parties Favors Transfer. ..................................... 23

5.    The Convenience to Witnesses Favors Transfer. ...................................... 24

6.    The Location of Books and Records Favors Transfer or Is Neutral. ........ 25

C.    The Public Interest Factors Favor Transfer. .......................................................... 25

1.    The Enforceability of the Judgment Is Neutral. ....................................... 25

2.    Practical Considerations Strongly Favor Transfer. ................................... 26

3.    The Relative Court Congestion Strongly Favors Transfer. ...................... 27

4.    The Local Interest in Deciding Local Controversies at Home and the Public Policies of the Fora Favor Transfer. ............................................... 28

5.    The Familiarity with Applicable State Law Is Neutral. ............................ 29

CONCLUSION ..................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*,
   332 F. App'x 787 (3d Cir. 2009) ...........................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................6

*Avaya Inc., RP v. Telecom Labs, Inc.*,
   838 F.3d 354 (3d Cir. 2016).................................................................15

*Bonavito v. President & Fellows of Harvard Coll.*,
   No. 20-14657, 2021 WL 2722578 (D.N.J. June 30, 2021)................27, 28

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
   627 F. Supp. 2d 384 (D.N.J. 2009) .................................................12, 29

*Buying for the Home, LLC v. Humble Abode, LLC*,
   459 F. Supp. 2d 310 (D.N.J. 2006) .................................................12, 29

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)..................................................................3

*Canfield Sci., Inc. v. Melanoscan, LLC*,
   No. 16-4636, 2017 WL 2304644 (D.N.J. May 25, 2017)...........14, 15, 16

*Carcanague v. DuPont De Nemours, Inc.*,
   No. 19-18181, 2020 WL 7481597 (D.N.J. Dec. 18, 2020)....................29

*Cerniglia v. Zimmer, Inc.*,
   No. 17-4992, 2018 WL 1069419 (D.N.J. Feb. 26, 2018) ....................6, 9

*Coda v. Constellation Energy Power Choice, LLC*,
   409 F. Supp. 3d 296 (D.N.J. 2019) (Vazquez, J.)................................16

*Cohan v. Acme Lift Co.*,
   No. 20-11075, 2021 WL 1625098 (D.N.J. Apr. 27, 2021)....................28

*Corp. Synergies Grp., LLC v. Andrews*,
   No. 18-13381, 2019 WL 3780098 (D.N.J. Aug. 12, 2019) .....................8

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..............................................................................18

*Dawes v. Publish Am. LLLP*,
  563 F. App'x 117 (3d Cir. 2014) ........................................................21

*Dawson v. Gen. Motors LLC*,
  No. 19-8680, 2020 WL 953713 (D.N.J. Feb. 24, 2020) ...................................6, 7, 18

*DePuy Synthes Sales, Inc. v. Gill*,
  No. 13-04474, 2013 WL 5816328 (D.N.J. Oct. 29, 2013) ...................................21

*Diversified Home Installations, Inc. v. Maxwell Sys., Inc.*,
  No. 09-6393, 2010 WL 1133773 (D.N.J. Mar. 22, 2010) ...................................27

*Diversified Indus., Inc. v. Vinyl Trends, Inc.*,
  No. 13-6194, 2014 WL 1767471 (D.N.J. May 1, 2014)......................................16

*Eagle Pharms., Inc. v. Eli Lilly & Co.*,
  No. 17-6415, 2018 WL 3492145 (D.N.J. July 20, 2018) ...................................19, 27

*EJ MGT LLC v. Zillow Grp., Inc.*,
  No. 18-584, 2019 WL 981649 (D.N.J. Feb. 28, 2019) ......................................13, 14

*Elite Pers., Inc. v. PeopleLink, LLC*,
  No. 15-1173, 2015 WL 3409475 (D.N.J. May 27, 2015)......................................17

*Empire Indus. Inc. v. Winslyn Indus., LLC*,
  No. 18-698, 2021 WL 214639 (N.D. Ill. Jan. 21, 2021)......................................30

*In re Exxon Mobil Corp. Derivative Litig.*,
  No. 19-16380, 2020 WL 5525537 (D.N.J. Sept. 15, 2020)..................................25, 29

*Faison v. Wells Fargo Bank, N.A.*,
  No. 18-11755, 2020 WL 7488895 (D.N.J. Dec. 21, 2020)...................................14

*Fin. Res. Fed. Credit Union v. Alloya Corp. Fed. Credit Union*,
  No. 20-6180, 2021 WL 268176 (D.N.J. Jan. 27, 2021)......................................28

*Foster v. Marriott Resort Hosp. Corp.*,
  No. 17-12901, 2018 WL 3360763 (D.N.J. July 10, 2018) ..................................20

*Gray v. Apple Inc.*,
  No. 13-7798, 2016 WL 4149977 (D.N.J. Aug. 3, 2016) ....................................21

*Halsoprodukter Labs Karnerud Ab. v. Gero Vita Int'l*,
  No. 93-2129, 1993 WL 384525 (N.D. Ill. Sept. 28, 1993)..................................19

*Hewlett-Packard Fin. Servs. Co. v. New Testament Baptist Church*,
  No. 18-10230, 2019 WL 3800234 (D.N.J. Aug. 13, 2019) ..................................21

*Hollister Inc. v. C.R. Bard, Inc.*,
  No. 10-6427 (N.D. Ill.) ..........................................................................................24

*In re Howmedica Osteonics Corp.*,
  867 F.3d 390 (3d Cir. 2017)...............................................................................6, 20

*Intervet, Inc. v. Mileutis, Ltd.*,
  No. 15-1371, 2016 WL 740267 (D.N.J. Feb. 24, 2016) ........................................14

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)...................................................................................25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)..............................................................................................12

*Lucas Indus., Inc. v. Kendiesel, Inc.*,
  No. 93-4480, 1995 WL 350050 (D.N.J. June 9, 1995).........................................16

*Marshall v. Verde Energy USA, Inc.*,
  No. 18-1344, 2019 WL 6975424 (D.N.J. Dec. 19, 2019).......................................17

*MaxLite, Inc. v. ATG Elecs., Inc.*,
  193 F. Supp. 3d 371 (D.N.J. 2016) ......................................................................20

*Mayflower Transit, LLC v. Prince*,
  314 F. Supp. 2d 362 (D.N.J. 2004) ......................................................................14

*My Canary LLC v. SusieAir, LLC*,
  No. 16-4000, 2017 WL 622235 (N.D. Ill. Feb. 15, 2017) .....................................30

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
  290 F.3d 578 (3d Cir. 2002)..................................................................................12

*NY Mach. Inc. v. Korean Cleaners Monthly*,
  No. 17-12269, 2018 WL 2455926 (D.N.J. May 31, 2018)......................................14

*Onuekwusi v. Graham*,
  No. 20-02965, 2021 WL 1085523 (D.N.J. Mar. 22, 2021) ........................3, 6, 9, 10

*Panaserve, LLC v. Trion Sols., Inc.*,
  No. 19-16496, 2021 WL 2644122 (D.N.J. June 28, 2021)....................................26

*Parks LLC v. Tyson Foods, Inc.*,
  863 F.3d 220 (3d Cir. 2017)..................................................................................12

*Pension Benefit Guar. Corp. v. White Consol Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993)...................................................................................9

*Plum Tree, Inc. v. Stockment*,
   488 F.2d 754 (3d Cir. 1973)...........................................................................3

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
   181 F.3d 410 (3d Cir. 1999)......................................................................3, 10

*Sandofsky v. TurboTenant*,
   No. 21-395, 2021 WL 2802544 (D.N.J. July 6, 2021) ..........................................27

*Tang v. Eastman Kodak Co.*,
   No. 20-10462, 2021 WL 2155057 (D.N.J. May 27, 2021)................................22, 27

*Toll Glob. Forwarding SCS (USA), Inc. v. Curtis Int'l, Ltd.*,
   No. 20-5753, 2021 WL 1702832 (D.N.J. Jan. 5, 2021)........................................22

*Wade v. Kessler Inst.*,
   172 N.J. 327, 798 A.2d 1251 (2002)..............................................................17

**Statutes**

28 U.S.C. § 1391(b)(2) ..................................................................................19

28 U.S.C. § 1404(a) ......................................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................6

## INTRODUCTION

This suit is a sideshow to a long-running dispute between Defendant Medline Industries, Inc. ("Medline") and Plaintiff C.R. Bard, Inc. ("Bard") concerning their competing Foley catheter kit products.[1]  Medline, an Illinois company, has for several years been prosecuting three patent infringement actions against Bard in the United States District Court for the Northern District of Illinois.  Bard and its parent Becton, Dickinson & Company ("BD") (together, "Plaintiffs") now accuse Medline of making false or misleading statements to customers about the Illinois patent litigation.  For example, Plaintiffs contend that Medline misrepresented to customers the contents of a March 3, 2021 Order from the Northern District of Illinois (attached as Ex. 1) concerning a new Bard Foley catheter kit.

The Amended Complaint frames the purported misrepresentations as claims for false advertising under the Lanham Act, which it includes along with seven other counts brought under various state-law theories.  (*See* ECF No. 25 ("Am. Compl.").)  To succeed on these theories, Plaintiffs would have to establish that Medline's statements were false or misleading, and that those statements deceived customers and harmed Plaintiffs.  In moving to dismiss the original Complaint, Medline pointed out that Plaintiffs offered no facts supporting an inference that any specific customer received these alleged statements and was misled by them such that Plaintiffs lost that customer; Medline further pointed out that facts appropriately considered on a motion to dismiss confirmed that the alleged "false" statements were in fact true.  (*See* ECF No. 21-1 at 5-12.)  The Amended Complaint cures neither deficiency.

In its Amended Complaint, Plaintiffs for the first time identify certain Medline personnel who purportedly made statements to specific customers.  However, Plaintiffs plead no facts

---

[1] A Foley catheter is a urinary catheter with a small, inflatable balloon at the end to hold it in place in a patient's bladder, allowing the catheter to drain urine over a period of hours or days.

suggesting that those specific customers were misled, such that Plaintiffs faced any likelihood of injury.  To the contrary, the Amended Complaint alleges that *other* customers—*not* the ones who allegedly received misleading information—recently decided to purchase Medline's Foley catheter kits.  That cannot state a claim.

Additionally, the Amended Complaint makes no attempt to address the facts that Medline appropriately provided, which show that the allegedly "false" statements, including those concerning Bard's ability to supply Foley catheter kits, are actually true.  Critically, Plaintiffs ignore a fatal defect with their theory, which Medline explained in its first motion to dismiss: BD told customers in July 2021 that Bard was experiencing "supply issues," and in August 2021 BD issued a recall on the Bard Foley catheter kits, notifying customers that their use "could result in a Urinary Tract Infection (UTI)," and specifically identifying Medline's Foley catheter kits as a substitute.  (*See* ECF No. 21-1 at 10 n.7; Exs. 7, 11 at 1, 2, 7; Ex. 10.)  Plaintiffs' failure to even attempt to address this deficiency confirms that they failed to state a facially plausible claim.

For all these reasons, and for additional deficiencies identified below, the Amended Complaint fails to state a claim for relief under any legal theory and should be dismissed with prejudice.  But this Court need not reach that issue, because the tribunal best suited to resolve this dispute (and to interpret its own Order) is the Northern District of Illinois.  Plaintiffs' claims arose in that District, where the related patent cases are pending, and where the court is already familiar with the parties, their products, and the March 3 Order at the heart of the Amended Complaint.  The center of gravity of this dispute lies in Illinois and has no meaningful connection to New Jersey.  The public and private considerations overwhelmingly favor transfer to the Northern District of Illinois.

## FACTUAL BACKGROUND[2]

### A.      Medline's Innovative Single-Layer Foley Catheter Kit Launches in 2009.

In 2009, Medline launched an innovative, single-layer Foley catheter kit under the name "ERASE CAUTI," which Medline sells to hospitals for use in catheterizing patients.  Ex. 2 ¶ 22. At that time, Bard dominated the market, selling exclusively two-layer kits, in which some components are stored in an upper tray, and the Foley catheter assembly (the catheter, tubing, and a drainage receptacle) is stored in a lower box.  Ex. 3 at 19:20–20:3.  To use such a kit, clinicians separate the two layers and work between them to complete steps of the procedure. Ex. 4 at 23:22–23:4.  Medline's single-layer kit was designed to better support clinicians in performing catheterization procedures according to sterile technique, which can reduce the risk of catheter-associated urinary tract infections ("CAUTI").  Ex. 2 ¶¶ 23–25.  And Medline obtained a series of patents on its innovative kit, the first of which issued in 2013.  Ex. 5 ¶ 17.

### B.      Bard Responds with a Copycat Single-Layer Kit, and Medline Sues Bard for Patent Infringement.

Bard recognized that its two-layer Foley kit design was a "weakness," that Medline was now the "current market leader in tray design," and that the launch and success of Medline's

---

[2] Unless otherwise indicated, these facts come from public filings in the Medline-Bard patent cases (referenced at Am. Compl. ¶¶ 9–10, 30–35, 40, 48).  "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."  *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *see Onuekwusi v. Graham*, No. 20-02965, 2021 WL 1085523, at *4 (D.N.J. Mar. 22, 2021) (Vazquez, J.) ("The Third Circuit allows courts to consider matters of public record when ruling on a motion to dismiss," and "[j]udicial proceedings are public records of which courts may take judicial notice.").  Additionally, a court deciding a motion to dismiss may consider documents that are "integral to or explicitly relied upon in the complaint."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).  For transfer, a movant may submit "affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)."  *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir. 1973).

"intuitive" single-layer kit indicated that tray layout could have a "great influence on customer buying preference[s]." Ex. 4 at 23:22–24:4, 28:18–21, 27:4–20. Bard had never sold a single-layer Foley catheter kit, and Bard's senior management determined that in order to compete with Medline, its next product "must include a single level tray." Ex. 3 at 22:3–7.

Without approaching Medline about obtaining a license to Medline's patents and pending patent applications on its innovative single-layer kit, Bard began to develop a competing single-layer kit, called "SureStep." As Bard designed SureStep, a Bard engineer recognized that it had "essentially the same layout" as Medline's tray. *Id.* at 23:1–9. Thus, unsurprisingly, when Bard launched SureStep in 2014, Medline promptly sued Bard for patent infringement. *See Medline Industries, Inc. v. C.R. Bard, Inc.*, No. 14-3618 (N.D. Ill.) ("*Medline I*"). Medline filed two more actions against Bard in the Northern District of Illinois, in March 2016 and October 2017, as additional related patents issued. *See* Nos. 16-3529 (N.D. Ill.) ("*Medline II*") and 17-7216 (N.D. Ill.) ("*Medline III*").[3] The parties have submitted proposed final pretrial orders in *Medline I* and *II*, and in *Medline III*, summary judgment and *Daubert* motions are fully briefed.

### C.    The *Medline III* Court Sanctions Bard for Concealing its "SureStep 1.1" Attempt to Design Around Medline's Patents.

While continuing to sell the accused single-layer SureStep kits, Bard began working on a new Foley catheter kit called "SureStep 1.1." (Am. Compl. ¶ 9.) Even though fact discovery was ongoing in the patent infringement suits, Bard concealed the existence of SureStep 1.1 for years, and finally produced a sample kit to Medline (under an attorneys-eyes-only designation) in September 2020. Ex. 1 at 3. Bard then served expert reports in *Medline III* claiming (in an

---

[3] Following a ruling in *Medline I* limiting the scope of that suit to a subset of the accused products, in 2020 Medline filed a fourth action, in the Northern District of Georgia (due to changes in patent action venue requirements), asserting one of the *Medline I* patents against the products that had been excluded from *Medline I*.

attempt to limit damages) that "SureStep 1.1, which has two layers, is an acceptable, non-infringing design alternative to Bard's current SureStep tray, which has one layer." *Id.* at 4.  In response, Medline moved to strike the experts' reliance on SureStep 1.1 due to Bard's concealment of SureStep 1.1 during discovery.  *Id.* at 1.  On March 3, 2021, the *Medline III* court issued an order concluding that Bard had violated Fed. R. Civ. P. 26(e) and that "the proper sanction is to order Bard to pay Medline's 'reasonable expenses, including attorney's fees,' caused by its unjustified and harmful late disclosure of SureStep 1.1."  *Id.* at 11–18.

The *Medline III* court's March 3 Order publicly disclosed SureStep 1.1 for the first time, including Bard's declared intentions "to launch SureStep 1.1 in the first quarter of 2021, and [that] after this launch, [Bard] 'will no longer sell any single-layer SureStep trays upon the exhaustion of existing inventory.'"  *Id.* at 5.  The March 3rd Order thus disclosed Bard's plan to stop selling its single-layer SureStep kit, and to sell only the two-layer SureStep 1.1 kit going forward.  That information became public and available to Medline employees because of Bard's attempt to inject SureStep 1.1 into the *Medline III* patent case.

### D.    Bard Recalls Its SureStep 1.1 Foley Catheter Kit Based on Potential Infection Risk.

Bard's announced conversion from the single-layer SureStep kit to SureStep 1.1 did not proceed as planned.  In July 2021, before filing the Amended Complaint, BD notified customers of a SureStep supply interruption, explaining that it was working through "supply issues associated with [its] production of" Foley catheter trays and that it "anticipate[d] supply to be constrained over the next few weeks."  *See* Ex. 6 (July 20, 2021 letter).  Then, on August 13, 2021, BD notified customers and Medline (as a distributor) of an "URGENT MEDICAL DEVICE RECALL" for SureStep 1.1, based on a "sterile barrier breach" which "may result in patients being exposed to non-sterile urethral catheters which could result in a Urinary Tract

Infection (UTI) or other infection."  Exs. 7, 11 at 1; Ex. 8 at 1; Ex. 10.  BD specifically instructed

customers that Medline's "Foley Tray Systems" were an "alternative" to SureStep 1.1.  Exs. 7,

11 at 2, 7.  Bard's recall notice and customer letter are publicly available on the BD website, *see*

Exs. 9–11, making them "matters of public record [that the Court may consider] when ruling on

a motion to dismiss."  *Onuekwusi*, 2021 WL 1085523, at *4.  *See, e.g.*, *Cerniglia v. Zimmer, Inc.*,

No. 17-4992, 2018 WL 1069419, at *3 n.3 (D.N.J. Feb. 26, 2018) (noting in deciding a motion to

dismiss that "although the recall notice is not referenced in or attached to the Amended

Complaint, it is a public document this Court may consider").

## LEGAL STANDARDS

### A.    Dismissal Under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails

"to state a claim upon which relief can be granted."  To survive dismissal, a complaint must

contain sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.*

### B.    Transfer Under 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).  "[C]ourts decide whether to grant a § 1404(a) transfer by evaluating

various private and public interests," and "[t]he balancing of those interests is in the district

courts' discretion."  *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 401 (3d Cir. 2017).  The

moving party bears the burden of establishing that these interests weigh in favor of transfer but it

need not show "truly compelling circumstances."  *Dawson v. Gen. Motors LLC*, No. 19-8680,

2020 WL 953713, at *2 (D.N.J. Feb. 24, 2020) (quoting *In re United States*, 273 F.3d 280, 388

(3d Cir. 2001)).  Rather, the question is whether, "all relevant things considered, the case would

be better off transferred to another district."  *Id.*

## ARGUMENT

### I.   The Amended Complaint Should Be Dismissed for Failure to State a Claim.

#### A.   Counts I-VI and VIII Should Be Dismissed Because Plaintiffs Fail to Plead Facts Plausibly Suggesting that Any Statements Caused Bard to Lose Any Customers, and Because the Alleged "False" Statements Are True.

Counts I-VI and VIII all rest on the same theory that Medline made false or misleading

statements which deceived (or were likely to deceive) Bard's customers.  However, Plaintiffs fail

to plead facts supporting an inference that any customers were misled by these alleged

statements (thereby harming Bard), or indeed facts that would support an inference that these

statements were false.

##### 1.   The Amended Complaint Fails to Provide Facts Suggesting Any Medline Statements Deceived Any Customers to Plaintiffs' Detriment.

The Amended Complaint alleges that Medline made misleading statements to five

customers (Am. Compl. ¶¶ 39, 45–47, 73), and that Bard lost six customers to Medline (*id.*

¶¶ 81–82).  But these lists do not overlap.  Nor is there even an allegation that Bard lost any of

the same customers to whom Medline directed its supposed misrepresentations.  The Amended

Complaint's only allegation of a causal link between the alleged misconduct and harm is made

solely with respect to a single customer that switched to Medline products, where Plaintiffs

contend only on "information and belief" that Medline "marketed its products as substitutes" and

"made false and/or misleading statements . . . related to allegedly increased risk of CAUTI

associated with Bard's SureStep 1.1 product."  (*Id.* ¶ 81.)  But as this Court has explained:

> A plaintiff may plead facts upon information and belief "where it
> can be shown that the requisite factual information is peculiarly

> within the defendant's knowledge or control—so long as there are no boilerplate and conclusory allegations and plaintiffs accompany their legal theory with factual allegations that make their theoretically viable claim plausible."

*Corp. Synergies Grp., LLC v. Andrews*, No. 18-13381, 2019 WL 3780098, at *5 n.8 (D.N.J. Aug. 12, 2019) (Vazquez, J.) (quoting *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016)). The Amended Complaint contains no specific allegations as to any Medline statements made to that single customer (or for that matter to any of the six allegedly lost customers). And even if that information were deemed to be "peculiarly within [Medline's] knowledge or control," the Amended Complaint contains no factual allegations plausibly suggesting that Bard lost that single customer because of unidentified misrepresentations from Medline.

The Amended Complaint thus contains no factual allegation that could support an inference that the actual recipients of Medline's alleged statements were misled, such that they delayed or declined to place an order with Bard on account of the alleged statements. To the contrary, based on the allegations of the Amended Complaint, the customers who purportedly received the statements Plaintiffs contend were false chose to stick with Bard.

### 2. The Alleged Statements Concerning SureStep Supply, Bard's Copying and Infringement, or Infection Risk Are True.

Even if Plaintiffs had plausibly alleged that any specific lost Bard customer was misled by the alleged Medline statements (and they have not), those statements cannot support Plaintiffs' claims, because they were true. As documents the Court may consider on a motion to dismiss confirm, the statements at issue are accurate, and the Amended Complaint provides no facts supporting an inference that any customer was or would be misled by these true statements.

First, Plaintiffs contend that Medline made "false and misleading statements insinuating that Bard and BD will no longer be able to supply Foley catheter trays to Bard's customers or

that Bard's supply of Foley catheter trays may be interrupted or delayed."  (Am. Compl. ¶ 43.)

But Bard told the Northern District of Illinois in a filed pleading that it "intends to launch

SureStep 1.1 in the first quarter of 2021," and "*will no longer sell any single-layer SureStep trays*

upon the exhaustion of existing inventory."  Ex. 1 at 5 (emphasis added).  So, based on Bard's

own representations, its supply of single-layer SureStep kits would be interrupted.  Additionally,

before filing the Amended Complaint, BD notified its customers of a SureStep supply

interruption and product recall.  *See* Ex. 6 (July 20, 2021 letter informing customers that BD was

working through Foley catheter tray "supply issues"); Exs. 7, 11 (Aug. 13, 2021 notice recalling

two-layer SureStep kits).  BD also notified Medline, as a distributor, that it should contact

customers "immediately to advise them of the recall" and informed customers that Medline's

"Foley Tray Systems" are an available "alternative to" the recalled SureStep kit.  Ex. 8 at 3, 7;

Exs. 7, 11 at 2, 7.  The recall notice confirms that Bard's supply of Foley catheter trays has in

fact been interrupted.  Medline raised this public recall in its first motion to dismiss (*see* ECF

No. 21-1 at 10 n.7), but the Amended Complaint does not mention it.  Still, the Court may

consider it here.  *See Pension Benefit Guar. Corp. v. White Consol Indus., Inc.*, 998 F.2d 1192,

1196 (3d Cir. 1993) ("Otherwise, a plaintiff with a legally deficient claim could survive a motion

to dismiss simply by failing to attach a dispositive document . . . ."); *Onuekwusi*, 2021 WL

1085523, at *4; *Cerniglia*, 2018 WL 1069419, at *3 n.3.

Second, Plaintiffs contend that Medline made "false and/or misleading statements . . .

claiming that Bard 'copied' Medline's single-layer Foley catheter tray."  (Am. Compl. ¶ 85.)[4]

---

[4] Plaintiffs also assert that Medline told customers that Bard "must now change the design of its
trays or that Bard cannot continue to sell the original SureStep design because of the patent
litigation currently pending between Medline and Bard."  (Am. Compl. ¶ 85.)  But the only
specific fact alleged in support of this contention is an excerpt of an email purportedly stating

But the public, judicial record in the ongoing patent cases—appropriately considered here, *see S. Cross*, 181 F.3d at 426; *Onuekwusi*, 2021 WL 1085523, at *4—establishes that Bard *did* copy Medline's single layer kit.  As explained above in Factual Background Sections A–B, Bard sold only two-layer kits until it saw the competitive threat from Medline's single-layer kit, recognized that Medline was the "market leader in tray design," and then made its own single-layer kit, SureStep, with "essentially the same layout" as Medline's kit.  *See* Ex. 4 at 23:22–24:4, 28:18–21, 27:4–20; Ex. 3 at 22:3–7, 23:1–9.  And Bard has now implicitly conceded that the substantial majority of its SureStep products infringe at least one claim of Medline's U.S. Patent No. 9,745,088, further confirming that SureStep is a copy of Medline's claimed inventions.  Ex. 12 at 6–7 (arguing non-infringement of claim 71 of the '088 patent only with respect to a subset of its SureStep kits).

Third, the Amended Complaint alleges that a presentation "misleadingly takes the quoted language [from the March 3 Order] utterly out of context, suggesting that Bard's SureStep product has been found to infringe one or more Medline patents—which is untrue."  (Am. Compl. ¶ 40.)  But the quotes are, as a matter of law, accurate, and the presentation provides full context with a hyperlink to the Order.  (*Id.*)  The presentation does not say that Bard has been found to infringe, and the Amended Complaint provides no facts suggesting that any customer interpreted it to say so.  And even if Medline had made any statement suggesting that Bard infringed, as noted above, Bard conceded that it does infringe at least one Medline patent.

---

that Bard "copied and thus they now must revert back to a two-layer design."  (Am. Compl. ¶ 42.)  That statement contains no reference to the patent litigation, and Bard pleads no facts suggesting that anyone who received this email believed that a court had required Bard to change its product, rather than that Bard decided to make the change to try to limit its legal risk.

Fourth, Plaintiffs allege that Medline made "false and/or misleading statements" "suggesting that Bard's proposed SureStep 1.1 two-layer Foley Catheter design may increase the risk of CAUTI." (Am. Compl. ¶ 85.) But that is precisely what BD's recall notice told customers: Use of SureStep 1.1 "may result in patients being exposed to non-sterile urethral catheters which could result in a Urinary Tract Infection (UTI) or other infection." Exs. 7, 11 at 1; Ex. 8 at 1. In any event, the slides reproduced in the Amended Complaint merely identify that moving from single-layer SureStep to two-layer SureStep 1.1 is a "process change," "practice change," or "practice variation" presenting a "risk for contamination." (Am. Compl. ¶¶ 61–64.) Even leaving aside BD's recall notice, those statements are indisputably true. Indeed, the page describing the SureStep product on BD's website declares—in its first sentence—that "Foley catheter management practices vary from nurse to nurse potentially resulting in additional infection risk." Ex. 13. Clinicians switching from single-layer SureStep to two-layer SureStep 1.1 will necessarily change their Foley catheterization procedure practices, because the kits present the components in completely different ways. Given that Plaintiffs themselves market SureStep by declaring that practice variation presents a risk of infection, they cannot plausibly allege that the same observation by Medline constitutes a false or misleading statement.

### 3. False Advertising (Counts I-IV)

Count I of the Amended Complaint alleges false advertising under the Lanham Act. To state such a claim, Plaintiffs must plead the following elements:

> (1) that the defendant has made false or misleading statements as to [its] own product [or another's]; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226–227 n.7 (3d Cir. 2017) (quoting *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91–92 (3d Cir. 2000)).  With respect to the statements at issue, Plaintiffs must allege that they are either "(1) literally false or (2) literally true or ambiguous, but [have] the tendency to deceive consumers."  *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002).

Counts II–IV invoke New Jersey and common law unfair competition.  (Am. Compl. ¶¶ 93–112.)  These Counts, however, merely replicate and add nothing to Count I, because "unfair competition claims under New Jersey statutory and common law generally parallel those under § 43(a) of the Lanham Act," *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 454 (D.N.J. 2009), and are subject to the same analysis, *see Buying for the Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 317–18 (D.N.J. 2006) ("Because the elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition . . . under New Jersey statutory and common law, the Court's analysis . . . extends to Plaintiff's state law claims as well.").

The Amended Complaint fails to set forth facts plausibly suggesting that the alleged statements are literally false.  *See* Section I.A.2.  And the Amended Complaint fails to set forth facts plausibly suggesting that any such statements would tend to deceive consumers, that such statements were material (*i.e.*, that they were likely to influence purchase decisions), or that they created any likelihood of injury to Plaintiffs.  As the Supreme Court has explained, "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation *proximately caused by the defendant's misrepresentations*."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014) (emphasis added).  Plaintiffs' false advertising claims should be dismissed

because the Amended Complaint provides no factual allegations plausibly suggesting that

Medline's statements proximately caused any injury to Plaintiffs.  To the contrary, the Amended

Complaint suggests that customers who allegedly received these statements continued to

purchase from Bard; and Plaintiffs fail to plead facts plausibly suggesting that Medline made any

misstatements to customers that did switch to Medline, much less that such customers switched

to Medline *because of* those statements.  *See* Section I.A.1.

### 4.      Trade Libel (Count V)

In order to establish a claim for trade libel, Plaintiffs must demonstrate "(1) publication

(2) with malice (3) of false allegations concerning [their] property or product (4) causing special

damages, *i.e.* pecuniary harm."  *EJ MGT LLC v. Zillow Grp., Inc.*, No. 18-584, 2019 WL

981649, at *8 (D.N.J. Feb. 28, 2019) (Vazquez, J.) (quoting *Sys. Operations, Inc. v. Sci. Games

Dev. Corp*, 555 F.2d 1131, 1140 (3d Cir. 1977)).  Plaintiffs must "plead and prove special

damages with particularity," and must "allege either the loss of particular customers by name, or

a general diminution in its business, and extrinsic facts showing that such special damages were

the natural and direct result of the false publication."  *Id.* at *9 (quoting *Mayflower Transit, LLC

v. Prince*, 314 F. Supp. 2d 362, 378 (D.N.J. 2004)).

The Amended Complaint fails to state a claim for trade libel because, as noted

previously, it fails to set forth facts plausibly suggesting that Medline made "false allegations."

*See* Section I.A.2.  Further, Plaintiffs' trade libel claim fails because the Amended Complaint

does not plead that any alleged falsehoods caused special damages.[5]  Again, the Amended

---

[5]  To predicate a trade libel claim based on a general diminution in business, Plaintiffs would
have to allege "facts showing an established business, the amount of sales for a substantial period
preceding the publication, the amount of sales for a [period] subsequent to the publication, facts
showing that such loss in sales were the natural and probable result of such publication, and facts
showing the plaintiff could not allege the names of particular customers" who withdrew or

Complaint identifies particular customers that Plaintiffs claim they lost to Medline (Am. Compl. ¶ 118), but Plaintiffs allege no facts suggesting that such lost sales "were the natural and direct result" of any allegedly false statements.  According to the Amended Complaint, those statements were made to other customers, whom Bard apparently retained.  *See* Section I.A.1.

Plaintiffs' allegations that they lost customers "due to Medline's disinformation campaign" thus rest only on "information and belief."  (Am. Compl. ¶ 118.)  These conclusory allegations of harm are insufficient to state a claim for trade libel.  *See EJ MGT*, 2019 WL 981649, at *9 (dismissing trade libel claim for failing to plead special damages with the requisite level of particularity); *NY Mach. Inc. v. Korean Cleaners Monthly*, No. 17-12269, 2018 WL 2455926, at *6 (D.N.J. May 31, 2018) (same); *Intervet, Inc. v. Mileutis, Ltd.*, No. 15-1371, 2016 WL 740267, at *6 (D.N.J. Feb. 24, 2016) (same); *Canfield Sci., Inc. v. Melanoscan, LLC*, No. 16-4636, 2017 WL 2304644, at *7–8 (D.N.J. May 25, 2017) (Vazquez, J.) (same).

### 5.     Breach of Contract (Count VI).

In order to state a claim for breach of contract, Plaintiffs must allege (1) the existence of the contract; (2) breach of the contract; (3) damages as a result of the breach; and (4) that BD performed its own duties under the contract.  *Faison v. Wells Fargo Bank, N.A.*, No. 18-11755, 2020 WL 7488895, at *4 (D.N.J. Dec. 21, 2020) (Vazquez, J.).

Plaintiffs' first breach theory contends that Medline breached its Distributor Agreement with BD by making the same set of alleged "untruthful representations" that underlie Plaintiffs' false advertising claims.  (Am. Compl. ¶¶ 122–124.)  But the Amended Complaint fails to state a

---

withheld their business.  *Mayflower Transit*, 314 F. Supp. 2d at 378 (quoting *Juliano v. ITT Corp.*, No. 90-1575, 1991 WL 10023, at *5 (D.N.J. Jan. 22, 1991)).  Plaintiffs allege no facts concerning their sales prior to or subsequent to any Medline statements, and no facts showing they were unable to identify specific customers they lost.  Accordingly, Plaintiffs cannot rely on a general diminution in business to satisfy special damages.

claim for breach of contract because it fails to set forth facts plausibly suggesting that the alleged Medline statements are "untruthful," such that they could breach the identified terms of the Distributor Agreement.  *See* Section I.A.2.  And Plaintiffs further fail to plead facts plausibly suggesting damages as a result of any breach, because, according to the Amended Complaint, the statements allegedly breaching the contract were made to customers whom Bard apparently retained, not customers that Bard lost.  *See* Section I.A.1.

The Amended Complaint adds a second breach theory—that Medline breached "by substituting and promoting its own competitive products to customers" who requested Plaintiffs' SureStep products in August 2021.  (Am. Compl. ¶¶ 69–74, 125; *see* Am. Compl. Ex. 1 at 4.13.) But again, Plaintiffs ignore that BD recalled those SureStep products in August 2021.  *See* Section I.A.2.  The Distributor Agreement requires Medline to follow BD's instructions in the event of a recall (*see* Am. Compl. Ex. 1 at 18.0), and BD's recall instructions included offering Medline's own Foley catheter kits as a substitute for Bard's unavailable, recalled SureStep kits, *see* Ex. 8 at 2, 7.  Given these undisputed and indisputable facts, Medline cannot have breached the Distributor Agreement by complying with BD's recall instructions.

### 6.  Tortious Interference with Prospective Economic Advantage (Count VIII).

To set forth a claim for interference with prospective economic advantage, Plaintiffs must plead "a reasonable expectation of an economic advantage, which was lost as a direct result of [defendant's] malicious interference, and that it suffered losses thereby."  *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016) (quoting *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc*., 282 N.J. Super. 140, 198–99 (App. Div. 1995)).  As this Court explained in *Canfield*, "[t]he mere allegation of lost business does not suffice," and "[a]t a

minimum, a plaintiff must [] at least allege specific prospective contracts that were interfered with."  2017 WL 2304644, at *5 (citations omitted).

The Amended Complaint fails to allege any specific prospective contracts that Bard lost due to Medline's alleged statements.  *See* Section I.A.1.  Identifying customers who allegedly received those Medline statements is insufficient where Plaintiffs fail to plead that Bard lost those specific customers.  *See Canfield*, 2017 WL 2304644, at *5 ("[M]erely listing the names of those to whom the June 18 Email was sent does not sufficiently plead that Plaintiff lost any of the recipient's potential business as a result.").  *See also Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc*., 332 F. App'x 787, 790 (3d Cir. 2009) (affirming dismissal where complaint failed "to identify a single, specific customer that [plaintiff] either lost or could have acquired but for [defendants'] conduct"); *Diversified Indus., Inc. v. Vinyl Trends, Inc.*, No. 13-6194, 2014 WL 1767471, at *5 (D.N.J. May 1, 2014) (dismissing where claim "fail[ed] to identify any actual contract or customer affected by [the] alleged misconduct"); *Lucas Indus., Inc. v. Kendiesel, Inc.*, No. 93-4480, 1995 WL 350050, at *9 (D.N.J. June 9, 1995) (dismissing where pleading failed to identify "a single customer or a single contract that [] was likely to consummate, but failed to consummate, due to the actions taken").

**B.      The Amended Complaint Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing (Count VII) Independent of the Breach of Contract Claim.**

Under New Jersey law, the implied covenant of good faith and fair dealing is a component of every contract that requires both parties to act in good faith, meaning that each party must refrain from "destroying or injuring the right of the other party to receive its contractual benefits."  *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 304 (D.N.J. 2019) (Vazquez, J.) (quoting *Iliadis v. Wal-Mart Stores, Inc*., 191 N.J. 88, 109, 922 A.2d 710 (2007)).  However, "a breach of the covenant of good faith and fair dealing must not

16

arise out of the same conduct underlying an alleged breach of contract action." *Marshall v. Verde Energy USA, Inc.*, No. 18-1344, 2019 WL 6975424, at *7 (D.N.J. Dec. 19, 2019) (Vazquez, J.) (quoting *CRA, Inc. v. Ozitus Int'l, Inc.*, No. 16-5632, 2017 WL 2779749, at *6–7 (D.N.J. June 27, 2017)).  *See Wade v. Kessler Inst.*, 172 N.J. 327, 344–45, 798 A.2d 1251 (2002) (same); *Elite Pers., Inc. v. PeopleLink, LLC*, No. 15-1173, 2015 WL 3409475, at *3 (D.N.J. May 27, 2015) (same).

Count VII should be dismissed because it alleges a breach of the covenant of good faith and fair dealing based on the same conduct that underlies the breach of contract claim alleged in Count VI.  Specifically, Count VII relies on the same alleged "false and/or misleading statements" and substitution and promotion of Medline's products (*see* Am. Compl. ¶¶ 131–134) that form the basis of Count VI's breach of contract claim (*see id.* ¶¶ 122–125 (alleging that Medline breached the Distributor Agreement by making "false and/or misleading representations" and "substituting and promoting its own competitive products")).

Plaintiffs allege that "[i]n the Distributor Agreement, Medline agreed to forebear from engaging in false advertising concerning BD's products and to refrain from disparaging BD" and from "substituting any competing product for BD's products."  (*Id.* ¶¶ 131–132.)  The Complaint then contends that this alleged conduct "deprived [BD] of a critical benefit under the Distributor Agreement: forbearance from false advertising, disparagement, and conversion by Medline." (*Id.* ¶¶ 133–135.)  Thus, Count VII of the Complaint alleges that the Distributor Agreement required Medline to forbear from false advertising, disparaging Bard, and substituting competing products, and that Medline engaged in those activities.  But that is exactly the same allegation of breach of contract found in Count VI—not an allegation of a breach of the covenant of good faith and fair dealing.  Accordingly, Count VII should be dismissed.

## II.      Alternatively, this Case Should Be Transferred to the Northern District of Illinois.

There is no good reason for this case to proceed here, rather than before a judge familiar with the parties' related litigation in the Northern District of Illinois, particularly where the central allegations of the Amended Complaint involve the interpretation of a court order in that very litigation.  If this case is not dismissed outright, it should be transferred to the Northern District of Illinois.

### A.      This Case Could Have Been Brought in the Northern District of Illinois.

A "threshold matter" in the transfer analysis is whether the suit could have initially been brought in the transferee forum.  *Dawson*, 2020 WL 953713, at *2.  Here, the action could certainly have been filed in the Northern District of Illinois, because that court has personal jurisdiction over defendant Medline and venue would have been proper there.

#### 1.      The Illinois Court Has Personal Jurisdiction Over Medline.

"With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation marks and citation omitted).  Medline is organized under the laws of the State of Illinois and has its principal place of business in Northfield, Illinois, which is within the Northern District of Illinois.  Genender Decl. ¶ 2.  Thus, the United States District Court for the Northern District of Illinois has general personal jurisdiction over Medline.

#### 2.      Venue Is Proper In the Illinois Court.[6]

"A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Plaintiffs'

---

[6] The Distributor Agreement that Plaintiffs reference (Am. Compl. ¶ 20) at most establishes New Jersey as one permissible forum for disputes arising under that agreement, but does not preclude

claims are based on Medline's sales practices in connection with the advertising and sale of Foley catheter kits.  (*See* Am. Compl. ¶ 1.)  As noted above, Medline is incorporated in Illinois and headquartered within the Northern District of Illinois.  Genender Decl. ¶ 2.  And Medline's Urology Division (including its sales leadership team) operates out of Medline's headquarters in Northfield, Illinois.  Genender Decl. ¶¶ 3–6.  Additionally, the individuals at Medline responsible for coordinating its messaging and competitive strategy with respect to Bard's SureStep 1.1 product work at Medline's headquarters in Northfield.  Genender Decl. ¶ 7–8.  Because the events allegedly giving rise to Plaintiffs' claims have thus taken place in the Northern District of Illinois, venue is proper in that district.[7]

### B.   The Private Interest Factors Favor Transfer.

The relevant private interests include (1) plaintiffs' forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) convenience to the parties based on their relative physical and financial condition; (5) convenience to witnesses; and (6) the location of books and records.  *Howmedica*, 867 F.3d at 402.  All of these factors except Plaintiffs' choice of forum weigh in favor of transfer or are neutral.

### 1.   Plaintiffs' Choice of Forum Carries Little Weight.

Plaintiffs chose to file this action in the District of New Jersey, but Plaintiffs' choice of forum is "a preference; it is not a right." *Eagle Pharms., Inc. v. Eli Lilly & Co.*, No. 17-6415,

---

other fora from being proper for such disputes.  Nor does it have any bearing on the proper venue for the six counts unrelated to that agreement.

[7] Although certain accused statements allegedly were made outside of Illinois, venue would still be proper in the Northern District of Illinois, as the location of Medline's headquarters and the center of its sales and marketing activities.  *See Halsoprodukter Labs Karnerud Ab. v. Gero Vita Int'l*, No. 93-2129, 1993 WL 384525, at *4 (N.D. Ill. Sept. 28, 1993) ("§ 1391(b)(2) directs that venue is proper not only where the most substantial activities giving rise to a claim occurred, but where lesser parts of these activities occurred, as long as these lesser parts were also substantial.").

2018 WL 3492145, at *7 (D.N.J. July 20, 2018) (Vazquez, J.) (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993)).  Thus, "[t]his court has frequently disregarded a plaintiff's preferred venue when New Jersey has little connection to the operative facts." *Foster v. Marriott Resort Hosp. Corp.*, No. 17-12901, 2018 WL 3360763, at *2 (D.N.J. July 10, 2018) (collecting cases).  *See also MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 393 (D.N.J. 2016) (Vazquez, J.) ("A plaintiff's interest in a choice of forum only decreases where the central facts of a lawsuit occur outside of the chosen forum.") (quotation marks and citation omitted).  And here, the Northern District of Illinois (where the underlying patent litigation is pending and where Medline's Urology Division is based) is much more closely tied to the operative facts than is New Jersey.  While the Amended Complaint adds new details to Plaintiffs' allegations concerning purported Medline misrepresentations, none concern sales representatives or customers in New Jersey.[8]  (*See* Am. Compl. ¶¶ 39, 42, 44–47, 56, 61, 65, 70–73, 81–82, 118.) Medline's general sales and distribution activities, employment of staff, and ownership of a subsidiary with a syringe manufacturing plant in New Jersey (*see id.* ¶¶ 21–23, 26) have no connection to Plaintiffs' claims for relief.

### 2. Defendant's Forum Preference Favors Transfer.

Defendant Medline prefers to litigate this action in the Northern District of Illinois, the location of three pending patent-infringement actions against Bard (out of which this case indisputably arises), and the location of Medline's headquarters.  The second private interest factor thus favors transfer.  And because Plaintiffs' claims arose in Illinois (as explained below in Section II.B.3) and concern the parties' ongoing litigation in Illinois, Medline's choice of the

---

[8] Additionally, although Bard has its principal place of business in New Jersey, its employees designed and developed the SureStep product at the headquarters of Bard Medical Division in Covington, Georgia—not in New Jersey. *See* Ex. 14 ¶¶ 2, 8–10.

Illinois court is "not arbitrary, but is entitled to some weight."  *Gray v. Apple Inc.*, No. 13-7798,

2016 WL 4149977, at *6 (D.N.J. Aug. 3, 2016) (giving weight to defendant's choice of forum

where "[a]ll, or virtually all, of the relevant facts concern events" occurring in that forum).

Plaintiffs may argue that a choice-of-law section of the 2006 Distributor Agreement

(which underlies their breach of contract claim) manifests a preference by Medline to litigate in

New Jersey, or even precludes transfer.  But Plaintiffs are mistaken.  First, as explained in

Section I.C, Plaintiffs have failed to state a claim for breach of contract, making this clause

irrelevant.

Second, the Distributor Agreement states only that the parties consent to non-exclusive

jurisdiction in federal court in New Jersey and waive an objection to venue.  That is a permissive

(as opposed to mandatory) forum-selection clause, so the traditional Section 1404 analysis

applies.  *See Dawes v. Publish Am. LLLP*, 563 F. App'x 117, 118 (3d Cir. 2014) ("If the contract

does not contain a mandatory forum selection clause, then a *forum non conveniens* analysis

applies."); *Hewlett-Packard Fin. Servs. Co. v. New Testament Baptist Church*, No. 18-10230,

2019 WL 3800234, at *2–4 (D.N.J. Aug. 13, 2019) (applying "traditional Section 1404 analysis"

because contract provision stating that the parties "consent to the jurisdiction of any local, state

or Federal court located within the State of New Jersey and waive any objection relating to

improper venue" is a permissive forum-selection clause which "does not designate New Jersey

as the exclusive forum").  *See also, e.g.*, *Toll Glob. Forwarding SCS (USA), Inc. v. Curtis Int'l,

Ltd.*, No. 20-5753, 2021 WL 1702832, at *3–4 (D.N.J. Jan. 5, 2021) (applying ordinary Section

1404(a) analysis where forum selection clause was permissive rather than mandatory).

Accordingly, any suggestion from Plaintiffs that this clause precludes transfer is without merit.

*See DePuy Synthes Sales, Inc. v. Gill*, No. 13-04474, 2013 WL 5816328, at *7 (D.N.J. Oct. 29,

2013) ("[A]ssent to a permissive forum selection clause has been found not to constitute a waiver of a party's right to claim a transferee forum as their preferred, convenient forum.").[9]

### 3. Plaintiffs' Claims Arose in the Northern District of Illinois, Strongly Favoring Transfer to That Forum.

To analyze the third private interest factor, where the claims arose, courts look to the "locus of the alleged culpable conduct." *Tang v. Eastman Kodak Co.*, No. 20-10462, 2021 WL 2155057, at *6 (D.N.J. May 27, 2021) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 538 (1988)). "[I]n the context of claims based on misrepresentations or omissions . . . the misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received." *Id.* (cleaned up). And where the claim "arises from strategic policy decisions of a defendant corporation . . . the defendant's headquarters can be considered the place where events giving rise to the claim occurred." *Id.* (cleaned up).

Here, Plaintiffs allege that "Medline has employed, and continues to employ, a calculated disinformation and false advertising campaign." (Am. Compl. ¶ 1.) In particular, Plaintiffs allege that "Medline initiated a coordinated sales strategy to discredit Bard and undermine Bard's sales of its SureStep product line," including by "making false and/or misleading statements regarding the Illinois patent litigation, the March 3 Order, and the clinical benefits of Bard's SureStep products." (Am. Compl. ¶¶ 34–35.) The subject matter of the alleged misrepresentations thus concerns events that transpired in the Northern District of Illinois—*i.e.*, the ongoing Medline-Bard patent litigation and the Northern District of Illinois's March 3 Order.

---

[9] Medline at most consented in 2006 (more than a decade before BD acquired Bard in 2017) to New Jersey as one forum to resolve disputes between BD and Medline's distribution division, which distributes thousands of different medical products (including BD products) to hospitals around the country. But that, of course, has no relevance to the other seven counts of the Amended Complaint or to the alleged "false or misleading statements," which concern Medline's Urology Division, Bard's Foley kit, and the patent litigation with Bard (not BD) in Illinois.

Moreover, these allegations (which Medline disputes) show that Plaintiffs' claims are based on purported misrepresentations by Medline that allegedly were made pursuant to a coordinated corporate policy, and the individuals at Medline responsible for coordinating messaging and competitive strategy regarding SureStep 1.1 all work in the Northern District of Illinois. Genender Decl. ¶ 8.  As such, the Northern District of Illinois should be considered the place where Plaintiffs' claims arose.  The third private interest factor thus favors transfer.

### 4.     The Convenience to the Parties Favors Transfer.

The fourth private interest factor is convenience to the parties based on their relative physical and financial condition.  Here, the parties are all sizeable companies with financial resources, so the relative convenience of one forum over another in general is minimal.  However, Medline and Bard are already engaged in three pending cases in the Northern District of Illinois related to the issues raised in the Amended Complaint.  Under these circumstances, it would be more convenient for the parties to resolve the present dispute in the Illinois court.

Plaintiffs' litigation history and operations in Illinois underscore that litigating this case there would not present any serious inconvenience for them.  BD maintains facilities and employees at multiple locations within the Northern District of Illinois, including Chicago, Carol Stream, Oak Forest, Vernon Hills, and Waukegan.  Ex. 15.  And both BD and Bard have availed themselves of the protection of the U.S. District Court for the Northern District of Illinois by filing claims and counterclaims in that court.  *E.g.*, *Baxter Int'l, Inc. v. Becton Dickinson & Co.*, No. 17-7576 (N.D. Ill.); *Daniels Sharpsmart, Inc. v. Becton, Dickinson & Co.*, No. 17-6940 (N.D. Ill.); *Hollister Inc. v. C.R. Bard, Inc.*, No. 10-6427 (N.D. Ill.); *Becton, Dickinson & Co. v. Cypress Med. Prods., Ltd.*, No. 94-5494 (N.D. Ill.).

Bard, for its part, consented to personal jurisdiction in the Northern District of Illinois in all three of the patent-infringement actions Medline brought there and admitted "that it is subject

to the general jurisdiction of" that court.  *See* Ex. 16 ¶¶ 11–12; Ex. 17 ¶ 12–13; Ex. 18 ¶ 13.

Bard also admitted that it "does and has done substantial business in the Northern District of

Illinois," that it "has offered for sale" in that judicial district the SureStep products Medline

accuses of infringing its patents, and that those products are sold and used in Illinois and within

the Northern District of Illinois.  Ex. 16 ¶¶ 11–12; Ex. 17 ¶¶ 12–13; Ex. 18 ¶¶ 13–14.

Additionally, Bard asserted counterclaims in the *Medline I* and *Medline III* cases in the Northern

District of Illinois.  *See* Ex. 16 at 14; Ex. 18 at 21–22.  Given all of these facts, on balance, it

would be more convenient to the parties (or, at a minimum, equally convenient) to litigate this

action in the Northern District of Illinois.  This factor therefore favors transfer.

### 5.  The Convenience to Witnesses Favors Transfer.

The fifth private interest factor—convenience to witnesses, to the extent that a witnesses

may be unavailable for trial—supports transfer.  Medline's Urology Division operates out of

Medline's Northfield, Illinois headquarters, in the Northern District.  Genender Decl. ¶¶ 2–8.

Medline's Alan Genender (Urology Division President), Eric Hendrickson (Urology Division

Vice President), Josh Carter (Senior Vice President of Acute Specialty Field Sales), Christine

Dorshorst (Vice President of Critical Care Sales), and Angela Zuick (Director of Clinical

Services) coordinate Medline's messaging for sales of Foley catheter kits, including its

competitive strategy with respect to SureStep 1.1, and all work at Medline's headquarters in the

Northern District of Illinois.  Genender Decl. ¶¶ 7–8.  These individuals, at least some of whom

are likely trial witnesses (though, to be sure, it is difficult to say based on the sparse allegations

in the Amended Complaint), would be available for trial in the Northern District of Illinois, but

they are outside the subpoena power of this Court.  By contrast, the Amended Complaint does

not identify any witnesses who would be available to testify in the District of New Jersey but

unavailable in the Northern District of Illinois.  Thus, this factor favors transfer.

### 6. The Location of Books and Records Favors Transfer or Is Neutral.

The sixth private interest factor—the location of books and records, to the extent the files could not be produced in the alternative forum—supports transfer or is neutral. The Medline personnel responsible for retaining and maintaining Medline's electronic records, including sales and marketing records for the Urology Division, work at Medline facilities in the Northern District of Illinois. Genender Decl. ¶ 10. While the common use of electronic discovery may render this factor neutral, the location of these individuals in the Northern District of Illinois, and not in New Jersey, nevertheless creates an additional connection to the Illinois court. Moreover, any possibly relevant hardcopy documents are more likely to be found in Illinois, not New Jersey. *See In re Exxon Mobil Corp. Derivative Litig.*, No. 19-16380, 2020 WL 5525537, at *4 (D.N.J. Sept. 15, 2020) (noting that while most records may be electronic, "any hardcopy documents are more likely to be found in Texas, not New Jersey."). The sixth private interest factor therefore favors transfer or, at a minimum, is neutral.

### C. The Public Interest Factors Favor Transfer.

The public interests that courts consider include (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative court congestion in the two fora; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995). All of these factors weigh in favor of transfer or are neutral.

### 1. The Enforceability of the Judgment Is Neutral.

The first public interest factor, the enforceability of the judgment, is neutral. "[W]hen both forums are federal district courts, this factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by

one federal forum or the other." *See Panaserve, LLC v. Trion Sols., Inc.*, No. 19-16496, 2021 WL 2644122, at *7 (D.N.J. June 28, 2021) (quoting *DGVault, LLC v. Dunne*, No. 18-14152, 2020 WL 57876, at *6 (D.N.J. Jan. 6, 2020)).

### 2.      Practical Considerations Strongly Favor Transfer.

The second public interest factor focuses on practical considerations that would make the trial easy, expeditious, or inexpensive.  Here, Plaintiffs' claims relate directly to ongoing litigation Medline brought against Bard in Illinois, accusing Bard's SureStep products of infringing Medline's patents.  (Am. Compl. ¶¶ 30–33.)  As discussed above (*see* Factual Background Section C), in one of those cases the court issued an order on March 3, 2021, sanctioning Bard and making public certain information concerning Bard's then-forthcoming SureStep 1.1 product.  (*See* Ex. 1.)  Plaintiffs now assert that "Medline's sales practices include making false and/or misleading statements regarding the Illinois patent litigation, the March 3 Order, and the clinical benefits of Bard's SureStep products" and that "Medline's sales representatives have mischaracterized the March 3 Order in emails and text messages with customers."  (Am. Compl. ¶¶ 35, 38.)  The Amended Complaint asserts that Medline "sought to mislead customers as to the status of the patent infringement dispute" and "the significance or meaning of the March 3 Order and statements contained therein."  (Am. Compl. ¶ 48.)

Because the Amended Complaint is indisputably based on statements stemming from the patent cases, Plaintiffs' claims raise issues with which the Illinois court is already familiar: Bard's SureStep products, Medline's allegations that Bard copied Medline's ERASE CAUTI product while developing SureStep, and Bard's representations about its plans to launch SureStep 1.1 and discontinue its previous SureStep product line.  And, Judge Ellis, who issued the March 3 Order, would know better than anyone "the significance or meaning of the March 3 Order and statements contained therein," which are central to Plaintiffs' Amended Complaint.

(Am. Compl. ¶ 48.)  *See Eagle Pharms*, 2018 WL 3492145, at *6 (granting motion to transfer where "Plaintiff's case in this Court and Defendant's suit in the District of Delaware are related in substantial and intertwined ways.").

Additionally, the fact that relevant witnesses, books, and records are likely located in the Northern District of Illinois (as explained above in Sections II.B.5 and II.B.6) would make a trial in that district easier, more expeditious, and more inexpensive than a trial in this Court.  *See Diversified Home Installations, Inc. v. Maxwell Sys., Inc.*, No. 09-6393, 2010 WL 1133773, at *8 (D.N.J. Mar. 22, 2010) (considering location of "witnesses, books, records and other documents necessary for litigation" in weighing "practical considerations that would make the trial easy, expeditious or inexpensive" and finding "[t]his factor weighs in favor of transfer.").  For both of these reasons, the second public interest factor strongly favors transfer.

### 3.    The Relative Court Congestion Strongly Favors Transfer.

The third factor, relative court congestion, strongly favors transfer, because the Illinois court is far less congested than is this Court.  "Official Court statistics maintained by the Administrative Office of the U.S. Courts indicate that New Jersey is one of the busiest Districts." *Sandofsky v. TurboTenant*, No. 21-395, 2021 WL 2802544, at *4 (D.N.J. July 6, 2021).  The District of New Jersey currently has four judicial vacancies (and until recently had six) among its seventeen judgeships, while the Northern District of Illinois has only one judicial vacancy (which just opened) among its twenty-two judgeships.  *See Bonavito v. President & Fellows of Harvard Coll.*, No. 20-14657, 2021 WL 2722578, at *5 (D.N.J. June 30, 2021); Ex. 19.

As of March 31, 2021, the District of New Jersey had the second-most civil filings and the second-most pending cases of all district courts, whereas the Northern District of Illinois ranked 33rd and 34th, respectively, in those categories.  *See* Ex. 20; *see also Tang*, 2021 WL 2155057, at *9 ("New Jersey faces the most significant backlog of cases in the country.").  That

is, New Jersey had over 57,000 pending cases, whereas the Northern District of Illinois—operating with eight more judges than New Jersey—had less than 13,000 pending cases.  *See* Ex. 20.  Even setting aside New Jersey's judicial vacancies, New Jersey had an average of 3,367 pending cases per judgeship, compared with just 582 in the Northern District of Illinois.  *See id.* Indeed, New Jersey "has been operating under a long-standing judicial emergency."  *Cohan v. Acme Lift Co.*, No. 20-11075, 2021 WL 1625098, at *6 (D.N.J. Apr. 27, 2021).  Because the Illinois court is far less congested than this Court, this factor favors transfer.  *See, e.g.*, *Fin. Res. Fed. Credit Union v. Alloya Corp. Fed. Credit Union*, No. 20-6180, 2021 WL 268176, at *8 (D.N.J. Jan. 27, 2021) (finding "the administrative difficulties stemming from court congestion heavily support transferring this matter" where the "district of New Jersey has a demonstrably heavier caseload than the" transferee court).

### 4.   The Local Interest in Deciding Local Controversies at Home and the Public Policies of the Fora Favor Transfer.

The fourth and fifth public interest factors, the local interest in deciding local controversies at home and the public policies of the fora, favor transfer for similar reasons.  This action concerns a dispute about how an Illinois company may compete and whether its sales strategies initiated in Illinois were proper.  Moreover, this dispute arose specifically as a result of language in a Northern District of Illinois order; the Amended Complaint alleges that Medline misrepresented that Order to customers.  (Am. Compl. ¶¶ 35, 38, 40–41, 48.)  The Illinois court thus has a strong interest in resolving this dispute and is best positioned to interpret its own Order, which outweighs any interest New Jersey may have in protecting Plaintiffs who are New Jersey companies.[10]  *See Bonavito*, 2021 WL 2722578, at *6 (finding that the "local interest in

---

[10] As noted above, Bard employees designed and developed the SureStep product at the headquarters of Bard Medical Division in Covington, Georgia—not in New Jersey.

deciding local controversies at home weighs in favor of transfer" where "New Jersey has an interest in protecting its residents" but transferee forum has a "particularly substantial" interest in resolving the dispute because "the alleged misconduct from which this action arises took place" there).  In contrast, "New Jersey jurors should not be burdened with adjudicating a matter concerning decisions and/or conduct which occurred almost exclusively outside the State of New Jersey."  *In re Exxon Mobil*, 2020 WL 5525537, at *4 (analyzing "public policies of the fora") (citations omitted).  Accordingly, both the fourth and fifth public interest factors favor transfer.

### 5.     The Familiarity with Applicable State Law Is Neutral.

The final public interest factor, the familiarity of the trial judge with the applicable state law, is neutral.  Count I alleges a violation of the Lanham Act, with which all federal district courts are familiar.  (Am. Comp. ¶¶ 84–92.)  Counts II and III allege false advertising and unfair competition under a New Jersey statute, and Count IV alleges common law unfair competition.  (*Id.* ¶¶ 93–112.)  But these merely parallel the Lanham Act false advertising and unfair competition claim of Count I.  *See Bracco Diagnostics*, 627 F. Supp. 2d at 454 (noting that "unfair competition claims under New Jersey statutory and common law generally parallel those under § 43(a) of the Lanham Act"); *Buying for the Home*, 459 F. Supp. 2d at 317–18 (analysis of unfair competition under the Lanham Act "extends to Plaintiff's state law claims as well").  Accordingly, the Northern District of Illinois's familiarity with the Lanham Act and false advertising cases make it equally competent to apply the parallel New Jersey statutes.

The Amended Complaint's remaining counts allege trade libel, breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference with prospective economic advantage.  (Am. Compl. ¶¶ 113–142.)  Regardless of which states' laws apply to these claims, "federal courts are generally well-equipped to apply the laws of other states and frequently do so in diversity cases."  *Carcanague v. DuPont De Nemours, Inc.*, No. 19-18181,

2020 WL 7481597, at *4 (D.N.J. Dec. 18, 2020) (finding that "familiarity of the trial judge with applicable state law is a neutral factor in this instance."). *See, e.g.*, *Empire Indus. Inc. v. Winslyn Indus., LLC*, No. 18-698, 2021 WL 214639, at *3–6 (N.D. Ill. Jan. 21, 2021) (applying New Jersey law to breach of contract and tortious interference claims); *My Canary LLC v. SusieAir, LLC*, No. 16-4000, 2017 WL 622235, at *4 (N.D. Ill. Feb. 15, 2017) (applying New Jersey law to breach of contract and breach of covenant of good faith and fair dealing claims).  Moreover, Plaintiffs' theories turn on interpretation of the March 3 Order more than they do on any intricacies of New Jersey law.  For these reasons, the final public interest factor is neutral or, at most, would weigh minimally against transfer.

*     *     *

In sum, while Plaintiffs' choice of forum may weigh against transfer, that factor is vastly outweighed by the other private interests and the public interest factors, all of which favor transfer or are neutral.  Since the private and public interests overwhelmingly favor transfer, this action should be transferred to the Northern District of Illinois.

**CONCLUSION**

For all the foregoing reasons, Medline respectfully requests that the Court dismiss the Amended Complaint in its entirety, or in the alternative transfer this action to the United States District Court for the Northern District of Illinois.

Respectfully submitted,

Dated: October 12, 2021        /s/ *Lawrence S. Lustberg*
       Newark, New Jersey

Lawrence S. Lustberg
Rachel S. Johnston
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
Telephone: (973) 596-4500

Thomas D. Rein (*pro hac vice*)
Stephanie P. Koh *(pro hac vice)*
Nathaniel C. Love (*pro hac vice*)
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL, 60603
Telephone: (312) 853-7000

*Attorneys for Defendant Medline Industries, Inc.*

31

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Medline Industries, Inc.'s MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER will be sent to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM-ECF system.

Date: October 12, 2021

/s/ *Lawrence S. Lustberg*