**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BECTON, DICKINSON & COMPANY and C.R. BARD, INC., <br><br>   *Plaintiffs*, <br><br>  v. <br><br>MEDLINE INDUSTRIES, INC., <br><br>   *Defendant*. | Civil Action No. 21-12929 <br><br> **OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

   In this case, Plaintiffs allege that Defendant Medline Industries, Inc. ("Medline") developed deceptive sales practices to convert Plaintiffs' customers to Defendant's competing products. Presently pending before the Court is Defendant's motion to dismiss or transfer. D.E. 27. Plaintiffs filed a brief in opposition, D.E. 28, to which Defendant replied, D.E. 30.[1] The Court reviewed the parties' submissions in support and in opposition and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion is **GRANTED in part** and **DENIED in part**.

---

[1] The Court refers to Defendant's moving brief as "Def. Br.," D.E. 27-1; Plaintiffs' opposition brief as "Plfs. Opp," D.E. 28; and Defendant's reply as "Def. Reply," D.E. 30.

I.    **BACKGROUND**[2]

Plaintiff Becton, Dickinson & Company ("BD") is a global company that sells medical supplies, equipment, and diagnostic products. Am. Compl. ¶ 24. Plaintiff C.R. Bard, Inc. ("Bard") is a wholly owned subsidiary of BD that specializes in urologic devices and supplies. *Id.* ¶ 25. In 2014, Bard introduced the SureStep Foley Catheter Tray to the market, and it is now used in more than 2500 hospitals in the United States. *Id.* ¶ 5. Bard also distributes the SureStep 1.1 Foley catheter tray, which is the "next generation" of the SureStep Foley catheter system. *Id.* ¶¶ 25, 31. Defendant Medline is a medical supply distributor that, among other things, sells competing Foley catheter tray products. *Id.* ¶¶ 6, 26.

On August 13, 2006, Medline and BD entered into a Distributor Agreement (the "Agreement"), through which Medline agreed to distribute certain BD products. *Id.* ¶ 7; *see also id.*, Ex. 1. Because Medline is a competitor, the Agreement includes ███████████████ ██████████ intended to protect BD from "potential usurpation of BD's business." *Id.* ¶ 8. These requirements include that Medline ██████████████████████████████████████████ supply BD's recommended products ███████████████████████████████ ████████████ and not substitute competitive products as an alternative to BD products. *Id.*, Ex. A at ¶¶ 4.3, 4.10, 4.13. In 2018, Medline and BD signed "Amendment #2 to the Distribution Agreement," through which Medline agreed to distribute additional ████ products, including ████████████ products. *Id.* ¶ 28; *see also id.*, Ex. 2.

---

[2] The facts are derived from Plaintiff's Amended Complaint (the "Am. Compl.") and the attached exhibits. D.E. 25. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider exhibits attached to the complaint and matters of public record. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Bard and Medline are involved in patent litigation over their competing Foley catheter kit products in the United States District Court for the Northern District of Illinois and the Northern District of Georgia. *Id.* ¶ 30. Through one of the cases in Illinois, Bard provided Medline with a pre-production sample of the SureStep 1.1. *Id.* ¶ 31. The Illinois district judge also discussed Bard's planned launch of the SureStep 1.1 product in a March 3, 2021 order ("March 3 Order") as to a discovery dispute. *Id.* ¶ 32.

Plaintiffs allege that Medline misconstrued the March 3 Order and made false and misleading statements about the patent litigation, as well as Bard's ability to continue selling its SureStep products. *Id.* ¶ 35. Plaintiffs allege that this is part of a coordinated, national sales strategy "to discredit Bard and undermine Bard's sales of its SureStep product line, including the newly-designed SureStep 1.1 Foley catheter system." *Id.* ¶ 34. Plaintiffs allege that Medline knew it was making false and/or misleading statements, *id.* ¶¶ 48-49, 57-58, and that the statements were designed to harm Bard, *id.* ¶¶ 52-53, 68. Plaintiffs claim that Medline created its disinformation campaign to redirect Bard's customers to Medline's competing Foley catheter products. *Id.* ¶ 69. Plaintiffs add that Medline successfully converted SureStep users to Medline's competing products. *Id.* ¶ 81-82.

As alleged, it appears that the disinformation campaign consists of two primary components: misinformation as to SureStep 1.1, including patent infringement; and unfounded allegations of an increased risk of CAUTI.[3] As to the first category, Plaintiffs allege that Medline disseminated through emails, text messages, and PowerPoints the following disinformation: (1)

---

[3] A catheter-associated urinary tract infection ("CAUTI") "is the most common type of hospital-acquired infection in the United States." *Id.* ¶ 4. As a result, healthcare providers "place great importance on avoiding or minimizing the risk of CAUTI when using Foley catheters" and Bard has taken steps to reduce the risk associated with its products. *Id.*

Bard had to change its original SureStep design as a result of the patent litigation, (2) Bard's SureStep was found to infringe one or more of Medline's products, (3) Bard discontinued its original SureStep product, and (3) Bard must now revert back to a two-layer design, which is going to negatively impact Bard's ability to supply sufficient inventory. *Id.* ¶¶ 37-51. As to the second category, Plaintiffs allege that Medline advertised that its single-layer system is safer and reduces the risk of CAUTI, although such statements have no evidential support. *Id.* ¶¶ 54-56. Plaintiffs add that Medline similarly indicated that SureStep 1.1 is more likely to cause CAUTI, which again has no basis in fact. *Id.* ¶¶ 61-65.

Plaintiffs filed suit on June 23, 2021, asserting claims for false advertising under the Lanham Act and New Jersey law as well as breach of contract claims related to the Distribution Agreement. D.E. 1. Defendant responded with a motion to dismiss or transfer. D.E. 21. Plaintiffs subsequently filed the Amended Complaint, D.E. 25, which rendered Defendant's motion moot, D.E. 34. Defendant then filed the instant motion to dismiss the Amended Complaint or transfer the matter to the North District of Illinois. Defendant contends that the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) or that the case should be transferred pursuant to 28 U.S.C. § 1404(a). D.E. 27.

## II.    LEGAL STANDARDS

### A.   Transfer Analysis

When a matter is filed in a proper venue, a court may transfer the case to a different venue pursuant to 28 U.S.C. § 1404(a). *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018). Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

4

28 U.S.C. § 1404(a). "The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum." *Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 440 (D.N.J. 2015).

### B. Rule 12(b)(6) Standard

Rule 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

### III.    ANALYSIS

### A. Motion to Transfer

Defendant seeks to transfer this matter to the Northern District of Illinois. Def. Br. at 1, 18. Plaintiffs counter that the matter should remain in the District of New Jersey largely because of a forum selection clause in the Agreement. Plfs. Opp. at 17-20.

5

In conducting a § 1404(a) analysis, a court must first determine whether a plaintiff could have brought suit in the proposed forum. *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010). Plaintiffs do not argue that the North District of Illinois is an improper forum. And given the fact that Defendant is an Illinois corporation with its principal place of business in the Northern District of Illinois, Am. Compl. ¶ 17, the Northern District of Illinois would have personal jurisdiction over Medline and is a proper venue. *See* 28 U.S.C. § 1391(b)(1) (stating that a civil action "may be brought in a judicial district in which any defendant resides"); 28 U.S.C. § 1391(c)(2) (explaining that for venue purposes, an entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business.").

The Court, therefore, turns to the second inquiry, whether transfer would be in the interest of justice and for the convenience of the parties and witnesses. 28 U.S.C. § 1404(a).

### 1. Permissive versus Mandatory Forum Selection Clause

The parties disagree as to whether and to what extent the forum selection clause in the Agreement impacts Defendant's motion to transfer. Defendant maintains that at most, the clause establishes New Jersey as one permissible forum for disputes. Def. Br. at 18 n.6. Plaintiffs counter that Medline is bound to litigate disputes related to the Agreement in New Jersey. Plfs. Opp. at 17-20. Thus, the threshold issue is whether the forum selection clause is mandatory or permissive, as this distinction alters the traditional Section 1404(a) analysis.

Typically, "courts decide whether to grant a § 1404(a) transfer by evaluating various private and public interest factors." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 401 (3d Cir.

2017).  If there is a mandatory forum-selection clause, however, the parties' contractual choice of forum must be "given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W.D. Tex.*, 571 U.S. 49, 59-60 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).  In such a case, a plaintiff's choice of forum merits no weight.  *In re McGraw-Hill*, 909 F.3d at 57.  In addition, a court should not consider the private interest factors, and "[i]nstead, 'a district court may consider arguments about the public-interest factors only.'"  *Id.* (quoting *Atl. Marine*, 571 U.S. at 64).

Neither the Supreme Court nor the Third Circuit has addressed whether the *Atlantic Marine* analysis applies to a permissive forum selection clause.  However, courts within this district appear to apply a traditional § 1404(a) analysis when presented with a permissive forum selection clause. *See, e.g.*, *Toll Glob. Forwarding SCS (USA), Inc. v. Curtis Int'l, Ltd.*, No. 20-5753, 2021 WL 1702832, at *4 (D.N.J. Jan. 5, 2021) (explaining that the permissive forum selection clause "will be treated only as one element to be considered in weighing the interest of justice under Section 1404(a)"); *Hewlett-Packard Fin. Servs. Co. v. New Testament Baptist Church*, No. 18-10230, 2019 WL 3800234, at *4-7 (D.N.J. Aug. 13, 2019) (applying traditional § 1404(a) analysis because of permissive forum selection clause); *Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, No. 13-4770, 2014 WL 4724625, at *2 (D.N.J. Sept. 23, 2014) ("While the Third Circuit has not directly addressed the issue, the majority of courts have declined to apply *Atlantic Marine* in cases involving permissive forum selection clauses."); *see also Dawes v. Publish Am. LLC*, 563 F. App'x 117, 118 (3d Cir. 2014) (explaining that "because the forum selection clause—which did not make jurisdiction in Maryland exclusive—was permissive, not mandatory," courts should apply a *forum non conveniens* analysis).  Accordingly, the weight of persuasive authority demonstrates that courts should only use the *Atlantic Marine* analysis for mandatory forum selection clauses.

In deciding whether a forum selection clause is mandatory or permissive, "a court's paramount consideration is the intent of the parties, guided by the plain language of the agreement." *Nitterhouse Concrete Prods., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 587 (D.N.J. Apr. 3, 2018) (quoting *Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 85 (3d Cir. 2006)). A permissive forum selection clause "authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere, whereas a mandatory clause dictates an exclusive forum for litigation under the contract." *Dawes*, 563 F. App'x at 118 (quoting *Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004)). In other words, a permissive clause "merely specifies the court empowered to hear litigation" and "allows parties to air disputes in that court without requiring them to do so." *Selective Way Ins. Co. v. Glasstech, Inc.*, 191 F. Supp. 3d 350, 360 n.17 (D.N.J. 2016).

The forum selection clause here provides as follows:



Compl., Ex. A at ¶ 32.0. Thus, the plain language does not provide that New Jersey federal court is the only forum available to resolve disputes. To the contrary, the clause provides that New Jersey is a "non-exclusive" forum and fails to include "some further language indicating the parties' intent to make jurisdiction exclusive." *See Meridian Consulting I Corp., Inc. v. Eurotec Can. Ltd.*, No. 19-22197, 2021 WL 689132, at *11 (D.N.J. Feb. 22, 2021); *see also Kim v. M&T Bank*, No. 17-11810, 2018 WL 4094839, at *6 (D.N.J. Aug. 28, 2018) (noting that the clause at issue "does not employ the term 'only,' nor does it use the words 'exclusive,' 'shall,' 'must,' or any other terms that might suggest exclusivity"). The forum selection clause here is a permissive clause. *See, e.g.*, *Hewlett-Packard*, 2019 WL 3800234, at *2, 3 (finding nearly identical forum

8

selection clause to be permissive); *Kim*, 2018 WL 4094839, at *5-6 (explaining that clause stating

that the plaintiff "irrevocably submits to the nonexclusive jurisdiction" of New Jersey courts and

waives "any claim that the same has been brought in an inconvenient forum" as a permissive

clause); *Traveledge Hotels, Inc. v. Mangat Houston Race Track, LLC*, No. 06-3543, 2007 WL

2156367, at *6, 8 (D.N.J. July 25, 2007) (concluding that clause stating that the defendant

"consents and waives its objection to venue in the [District of New Jersey]" was a permissive

clause) (internal punctuation omitted).

Plaintiffs counter that the clause is mandatory because it provides that once brought in a

New Jersey court, the parties waive any objections to venue. Plfs. Opp. at 18. But "a waiver of

an objection to improper venue does not preclude a Section 1404(a) motion to transfer for the

convenience of the parties and witnesses." *Siemens Fin. Servs., Inc. v. Patel*, No. 09-5079, 2010

WL 2521769, at *4 (D.N.J. June 15, 2010); *see also Plum Tree, Inc. v. Stockment*, 488 F.2d 754,

758 (3d Cir. 1973) (explaining that a forum selection clause "does not obviate the need for an

analysis of the factors set forth in § 1404(a) and does not necessarily preclude the granting of the

motion to transfer"). Because the clause is permissive, the Court applies a traditional Section

1404(a) analysis.

### 2. Section 1404(a) Factors

As discussed, "courts decide whether to grant a § 1404(a) transfer by evaluating various

private and public interests." *In re Howmedica*, 867 F.3d at 401. The private interest factors

include the following:

> [T]he plaintiff's forum preference as manifested in the original
> choice, the defendant's preference, whether the claim arose
> elsewhere, the convenience of the parties as indicated by their
> relative physical and financial condition, the convenience of the
> witnesses, and the location of books and records.

*Id.* at 402 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).  The public interest factors include the following:

> The enforceability of the judgment, the relative administrative difficulty in the fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judgment with the applicable state law in diversity cases.

*Id.*

As to the private interest factors, "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation omitted).  Plaintiffs' choice of forum here is afforded even greater weight due to the permissive forum selection clause.  *See Hewlett-Packard*, 2019 WL 3800234, at *5 (explaining that the plaintiff's choice of forum was entitled to deference due, in part, to the permissive forum selection clause specifying a New Jersey forum).

Defendant argues that courts disregard a plaintiff's choice of venue when the preferred venue has little connection to the case.  Defendant continues that the Northern District of Illinois is more closely tied to this matter because of the patent litigation and because Medline's urology division is based in the district.  Def. Br. at 20.  But the Amended Complaint establishes that critical events occurred throughout the country.  *See, e.g.*, Am. Compl. ¶¶ 39-42 (discussing a presentation that a Medline sales representative made in Florida); ¶¶ 45, 47 (discussing statements made to customers in Texas); ¶ 46 (discussing statements made to a California-based customer).  Plaintiffs further maintain that the Agreement was ███████████████████████████████████  ███████  *See* Berdela Decl. ¶¶ 3-5, 9.  Moreover, Bard and BD are both based in New Jersey.  Am. Compl. ¶¶ 15, 16.  Although the Court acknowledges that some events did occur in Illinois,

the conduct in Illinois is not enough to override the strong preference afforded to Plaintiffs' choice of forum, especially given the fact that other critical events occurred outside of Illinois, including in New Jersey.

In addition, although Defendant prefers to litigate this matter in Illinois, the parties contractually agreed that New Jersey is an appropriate forum. The existence of the forum selection clause severely weakens Defendant's argument about inconvenience. *See Radian Guaranty Inc. v. Bolen*, 18 F. Supp. 3d 635, 651 (E.D. Pa. 2014) (stating that "the existence of a forum selection clause of any kind significantly undercuts any argument that the preselected forum is inconvenient for the parties or their witnesses"); *Hewlett-Packard*, 2019 WL 3800234, at *5 (stating that despite the defendant's desire to litigate elsewhere "the permissive forum selection clause is viewed as a manifestation of the parties' preferences"). Accordingly, the private interest factors weigh against transfer.[4]

Medline's argument with respect to the public interest factors focuses on the ongoing patent litigation in the Northern District of Illinois. Medline argues that transferring the case would make trial easy and more expeditious because the Northern District of Illinois is already familiar with the parties, the products, and the March 3 Order. Def. Br. at 26-27. But there are three patent cases pending before three different judges in the Northern District of Illinois. Patent litigation, moreover, is distinct from unfair competition and breach of contract claims. To that end, no judge in the Northern District of Illinois would be familiar with the allegedly deceptive sales practices at the heart of Plaintiffs' claims in this matter.

---

[4] Medline concedes that any convenience based on the relative physical and financial condition of the parties "is minimal," Def. Br. at 23, and that the location of the books and records is neutral, *id.* at 25. As a result, the Court does not discuss these factors.

Defendant also maintains that Illinois is a better forum because the matter is local to Illinois, such that public policy favors Illinois and because local controversies should be decided at home. *Id.* at 28-29. But as discussed, this matter involves conduct that occurred throughout the country. Accordingly, this case is not truly local to Illinois. And as discussed, Plaintiffs are New Jersey-based companies. Am. Compl. ¶¶ 15, 16. Finally, Defendant argues that Illinois is a better forum due to court congestion in the District of New Jersey. Def. Br. at 27-28. Although the District of New Jersey is busy, several judges have recently been appointed in the district, which lessens the relative case load per judge. And this factor alone is not enough to justify a transfer. Therefore, the public interest factors do not weigh towards transfer.[5]

In sum, Medline fails to establish that the Northern District of Illinois is more convenient or that transferring the matter is in the interest of justice. Defendant's motion to transfer is denied.

**B. MOTION TO DISMISS**

**1. Unfair Competition (Counts I through IV)**

In Count I, Plaintiffs plead a claim for unfair competition under the Lanham Act. Am. Compl. ¶¶ 84-92. In Counts II through IV, Plaintiffs assert claims pursuant to New Jersey statutory and common law unfair competition. *Id.* ¶¶ 93-112. "Unfair competition claims under New Jersey statutory and common law generally parallel those under § 43(a) of the Lanham Act." *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 454 (D.N.J. 2009). Consequently, the Court considers these claims together.

The Lanham Act, in relevant part, provides that:

> (a) (1) Any person who, on or in connection with any goods or services . . . uses in commerce any . . . false or misleading

---

[5] Medline concedes that the enforceability of a judgment and familiarity with applicable state law are neutral or would minimally weigh against transfer. Def. Br. at 25-26; 29-30. As a result, the Court does not discuss these factors.

> description of fact, or false or misleading representation of fact, which- . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her . . . goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). To plead a claim under Section 43(a) of the Lanham Act, a plaintiff must plausibly allege the following:

> (1) that the defendant has made false or misleading statements as to his own product [or another's]; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Bracco Diagnostics, Inc.*, 627 F. Supp. 2d at 454 (alteration in original). Plaintiffs plead that Medline made false statements, Am. Compl. ¶¶ 45-47, and misleading statements, *id.* ¶¶ 37-53. Plaintiffs continue that these statements were made because of a national "coordinated sale strategy to discredit Bard and undermine Bard's sales." *Id.* ¶¶ 34-36. Finally, Plaintiffs indicate that they lost costumers because of Medline's disinformation campaign. *Id.* ¶ 82. These allegations are sufficient to plead an unfair competition claim under Section 43(a) of the Lanham Act.

Medline seeks to dismiss Counts I through VI, asserting that Bard fails to sufficiently allege that it lost customers because of the allegedly wrongful sales practices. Defendant faults Plaintiffs for not linking their examples of the improper statement with Bard's lost customers. Def. Br. at 7-8. In other words, Medline contends that the specific customers to whom Medline sales representatives allegedly made false and/or misleading statements to are not the same customers that Plaintiffs allege that they lost. Section 43(a) demands "proof providing a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of false advertising." *Warner-*

*Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 95 (3d Cir. 2000). Here, the parties sell products that directly compete in the market, Plaintiffs allege that Defendant's sales representatives made false and misleading statements to customers to switch customers to Defendant's product, and Plaintiffs allege that they lost customers to Defendant because of the alleged false and misleading statements. These allegations are sufficient to establish a "reasonable basis" for the belief that Plaintiffs are damaged by Defendant's advertising campaign.

Medline also contends that its statements were not actually false. Def. Br. at 8-11. In support, Medline relies on documents outside of the pleadings, including court documents from the patent litigation in the Northern District of Illinois, Ex. 1; a letter that BD sent to its customers, Ex. 2; and documents related to a recall of certain SureStep kits, Ex. 7, 8, 11. Defendant asks the Court to consider information that is not appropriate at the motion to dismiss stage. A court is focused on plausible factual allegations at the pleading stage. *See Twombly*, 550 U.S. at 555 (explaining that Fed. R. Civ. P. 8(a)(2) requires that pleadings include "[f]actual allegations" that "raise a right to relief above the speculative level"); *see also Fowler*, 578 F.3d at 213 ("[I]t has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." (internal quotation omitted)). "The proper place to resolve factual disputes is not on a motion to dismiss, but on a motion for summary judgment." *Doe v. Princeton Univ.*, --- F.4th ---, 2022 WL 965058, at *3 (3d Cir. Mar. 31, 2022). As result, the Court will not consider Defendant's alternate factual arguments at this time.[6]

---

[6] Again, when deciding a Rule 12(b)(6) motion to dismiss, a court may consider the pleadings, "exhibits attached to the complaint and matters of public record," and "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196. A court may also rely on

2.  **Trade Libel (Count V)**

Plaintiffs allege a claim of trade libel in Count V, which consists of four elements:  "(1) publication (2) with malice (3) of false allegations concerning plaintiff's property or product (4) causing special damages, i.e., pecuniary harm." *Sys. Operations, Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1140 (3d Cir. 1977).  Defendant first argues that the claim must be dismissed because Defendant did not make false statements.  Defendants rely on the same documents discussed above in making this argument.  For the reasons previously discussed, this argument falls short at this stage.

Defendant also argues that the trade libel claim must be dismissed because Plaintiffs do not plead that the allegedly false statements caused special damages.  Def. Br. at 13-14.  As to such damages, "the plaintiff must plead and prove special damages with particularity." *Intervet, Inc. v. Mileutis, Ltd.*, No. 15-1371, 2016 WL 740267, at *6 (D.N.J. Feb. 24, 2016) (quoting *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 378 (D.N.J. 2004)).  This requires that a plaintiff "allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication." *Id.* (quoting *Mayflower Transit*, 314 F. Supp. 2d at 378).  Here, Plaintiffs plead that "Medline successfully converted" one named customer in June 2021 from Bard to Medline's catheter products.  Plaintiffs plead, upon information and belief, that Defendant did so with false and/or misleading statements about the allegedly increased risk of CAUTI associated with Bard's SureStep product.  Am. Compl. ¶ 81.

---

"a document integral to or explicitly relied upon in the complaint." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citation omitted).

A plaintiff may plead facts upon information and belief "where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control – so long as there are no boilerplate and conclusory allegations, and plaintiffs accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (internal punctuation omitted)). Facts pled on information and belief must "set forth the 'specific facts upon which the belief is reasonably based.'" *ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 488 (D. Del. 2010) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009)). Here, specific statements that Defendant's sale representatives may have made to the customer at issue are within Defendant's knowledge or control. And Plaintiffs' "upon information and belief" allegation is supported by specific examples of misleading or false statements that Defendant's sales representative made to other customers in emails and presentations. Through these allegations, Plaintiffs' allegations made upon information and belief are theoretically viable. Consequently, Plaintiffs plausibly plead a trade libel claim.

### 3. Breach of Contract (Count VI)

To state a claim for breach of contract under New Jersey law, a plaintiff must allege that (1) "that 'the parties entered into a contract containing certain terms'"; (2) "that 'plaintiffs did what the contract required them to do'"; (3) "that 'defendants did not do what the contract required them to do'"; and (4) "that 'defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs.'" *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). In Count VI, Plaintiffs allege, among other things, that Medline breached the Distributor Agreement by making untruthful representations about Bard's

product.  Am. Compl. ¶ 122.  Plaintiffs allege that this violated numerous provisions of the Agreement, including that Medline shall make ███████████████████████████ ████████ to customers.  Am. Compl., Ex. A at ¶ 4.3.  Again, Defendant seeks to dismiss Plaintiffs' breach of contract claim, in part, because Plaintiffs fail to allege that any of the statements were untruthful.  Def. Br. at 14-15.  For the reasons discussed above, these arguments are rejected at this stage.

Defendant also maintains that Plaintiffs fail to state a breach of contract claim because the statements that allegedly breached the agreement were not made to customers that Bard lost.  Def. Br. at 15.  As discussed, Plaintiffs allege that Defendant's sales representatives made false and misleading statements to customers so that the customers would switch to Defendant's product, as part of a national "coordinated sales strategy.  Plaintiffs provide specific examples of the alleged disinformation campaign.  Plaintiffs also allege that they lost customers to Defendant because of the alleged false and misleading statements.  These allegations sufficiently plead that Defendant breached Section ██ of the Agreement, and that Plaintiffs were damaged by this breach.  Thus, Plaintiffs sufficiently state a breach of contract claim.[7]

### 4.  Breach of the Covenant of Good Faith and Fair Dealing (Count VII)

In Count VII, Plaintiffs allege that Defendant breached the implied covenant of good faith and fair dealing because Defendant made false or misleading statements about the SureStep product "that were designed to influence customer purchasing decisions."  Am. Compl. ¶ 133. Plaintiffs allege that because of this alleged misconduct, BD "was deprived of a critical benefit under the [Agreement]" and that this was a "bad faith repudiation of Sections ███████████ "

---

[7] Because Plaintiffs state a claim for breach of contract, the Court does not reach Defendant's remaining arguments to dismiss Count VI.

*Id.* ¶¶ 135-36. Defendant contends that Count VII must be dismissed because it is based on the same conduct as Plaintiffs' breach of contract claim. Def. Br. at 17. The Court agrees. The implied covenant of good faith and fair dealing is a "component of every contract" that requires both parties to a contract act in "good faith[,]" that is, they must "adher[e] to community standards of decency, fairness, or reasonableness." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007) (internal citations omitted). Good faith "requires a party to refrain from destroying or injuring the right of the other party to receive its contractual benefits." *Id.* (citation omitted). To succeed on a claim for breach of the covenant of good faith and fair dealing, a party must prove that "(1) the [opposing party acted] in bad faith or with a malicious motive, (2) to deny the [party] some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Yapak, LLC v. Mass. Bay Ins. Co.*, No. 09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009). But "in New Jersey, a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract." *Id.* at *7. In Count VII, Plaintiffs rely on the same conduct and allege that Defendant violated the same contractual provisions as in breach of contract claim. Simply alleging that Defendant did so with bad faith is not sufficient to plead a claim for breach of the implied covenant of good faith and fair dealing.

Plaintiffs contend that Count VII should not be dismissed because alternative claims are permissible. Plfs. Opp. at 15-16. Parties can plead claims in the alternative. *See CRA, Inc. v. Ozitus Int'l, Inc.*, No. 16-5632, 2017 WL 2779749, at *7 (D.N.J. June 27, 2017) (recognizing that in appropriate cases a plaintiff may plead alternative claims and a jury may determine whether the defendant breached the express terms of a contract or the implied covenant of good faith and fair

dealing); *see also* Fed. R. Civ. P. 8(d)(2).  But the factual basis for an implied covenant claim that is pled in alternative must be separate and distinct from the allegations that form the breach of contract claim.  *See CRA, Inc.*, 2017 WL 2779749, at *7 (dismissing implied covenant claim because the "allegedly wrongful conduct is that [the defendants] violated their non-compete and confidentiality agreements").  Here, as discussed, in Count VII, Plaintiffs plead that Defendant breached specific contract terms based on identical conduct as Plaintiffs' breach of contract claim. Count VII, therefore, is dismissed.

### 5.  Tortious Interference with Prospective Economic Advantage (Count VIII)

In Count VIII, Plaintiffs allege that Medline's allegedly improper sales practices interfered with Plaintiffs' prospective sales.  Am. Compl. ¶¶ 139.  Under New Jersey law, a plaintiff must plead the following elements to establish such a claim:

> (1) a plaintiff's reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference.

*Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d Cir.1992) (citing *Printing Mart–Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37 (N.J. 1989)).  The "mere allegation of lost business" is not sufficient to establish a plaintiff's reasonable expectation of interference. *Advanced Oral Techs., L.L.C. v. Nutres Research, Inc.*, No. 10-5303, 2011 WL 198029, at *9 (D.N.J. Jan. 20, 2011).  Instead, "a plaintiff must at least allege specific prospective contracts that were interfered with."  *Novartis Pharm. Corp. v. Bausch & Lomb, Inc.*, No. 07-5945, 2008 WL 4911868, at *7 (D.N.J. Nov. 13, 2008).

Defendant maintains that Count VIII must be dismissed because Plaintiffs fail to identify specific prospective contracts.  Instead, Plaintiffs only identify business they already lost.  Def. Br.

at 15-16.  But Plaintiffs do more than generally plead that they lost business.  Plaintiffs plead that Defendant interfered with specific customers in multiple states and that Plaintiffs lost sales from these customers.  Am. Compl. ¶¶ 81-82.  These allegations sufficiently plead Plaintiffs' reasonable expectation of economic benefit.  *See, e.g.*, *Novartis Pharm. Corp.*, 2008 WL 4911868, at *7 (explaining that the plaintiff failed to state a claim, in part, because it did not identify any customer "with whom it currently does business" and lost because of the alleged interference). Consequently, Count VIII is not dismissed.

## IV.    CONCLUSION

For the reasons stated above, and for good cause shown,

**IT IS** on this 20th day of April, 2022,

**ORDERED** that Defendant's motion to dismiss or transfer (D.E. 27) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Defendant's motion is **GRANTED** as to Count VII of the Amended Complaint, and the count is dismissed without prejudice.  Plaintiffs shall have thirty (30) days to file an amended complaint that cures the deficiencies noted above with respect to Count VII.  If Plaintiffs do not file an amended complaint within that time, Count VII will be dismissed with prejudice; and it is further

**ORDERED** that Defendant's motion is otherwise **DENIED**; and it is further

**ORDERED** that because the Court considered documents that were filed under seal to decide this Opinion & Order, the Opinion & Order shall initially be filed under seal.  By April 27, 2022, the parties shall inform the Court, via a letter filed on the docket, if any portion of the

Opinion & Order should remain under seal and the legal basis for doing so.  If the Court does not

receive any such submission, the Opinion & Order will be unsealed on April 28, 2022.


_____
John Michael Vazquez, U.S.D.J.