**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BECTON, DICKINSON & COMPANY and C.R. BARD, INC.,

   *Plaintiffs/Counterclaim-Defendants*,

v.

MEDLINE INDUSTRIES, LP,

   *Defendant/Counterclaim-Plaintiff.*

Civil Action No. 21-12929

**OPINION & ORDER**

**John Michael Vazquez, U.S.D.J.**

  This matter comes before the Court on the motion of Plaintiffs Becton, Dickinson & Company ("BD") and C.R. Bard, Inc. ("Bard") (collectively, "Plaintiffs") to dismiss Defendant Medline Industries, Inc.'s ("Medline") counterclaims for Plaintiffs' alleged use of false and misleading tactics in their competition with Medline as to Foley catheter products. D.E. 66. The Court reviewed the parties' submissions in support and in opposition of the motion,[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Plaintiffs' motion is **DENIED**.

---

[1] The Court refers to Defendant's Answer, Affirmative Defenses, and Counterclaims as "Ans." and "CC," respectively, D.E. 50; Plaintiffs' moving brief as "Plfs. Br.," D.E. 67; Defendant's opposition brief as "Def. Opp," D.E. 75; and Plaintiffs' reply as "Plfs. Reply," D.E. 76.

## I. FACTUAL BACKGROUND[2]

The Court incorporates by reference the factual background recounted in its Opinion issued in response to Medline's motion to dismiss Plaintiffs' First Amended Complaint ("FAC"). D.E. 37. On August 13, 2006, Medline and BD entered into a Distributor Agreement (the "Agreement") through which Medline agreed to distribute certain BD products and adhere to certain ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ans. at 3 ¶ 7; *see also* D.E. 25-1 (FAC Ex. 1). In 2018, following BD's acquisition of Bard, Medline and BD signed an Amendment to the Distribution Agreement (the "2018 Amendment") through which Medline agreed to distribute additional products, including Bard's SureStep products. Ans. at 3 ¶ 7; *see also* D.E. 25-2 (FAC Ex. 2).

Medline and Bard compete in the market for health care supplies, including as to the sale and distribution of urinary catheterization kits. CC at 34 ¶ 17. Medline both distributes Bard's urinary catheterization kits and sells its own branded urinary catheterization kits. CC at 34 ¶ 17. In 2009, Medline designed the industry's first single-layer Foley catheter kit, marketed under the trade name "ERASE CAUTI," to reduce the risk of CAUTI--catheter-associated urinary tract infections. CC at 34 ¶ 18. Medline continued to develop methods for using catheter tray assemblies to reduce the risk of CAUTI and received several patents for these inventions. CC at 34 ¶ 18. In 2010, Bard began selling a new Foley catheter kit, known as "Advance," which

---

[2] The facts are derived from Plaintiffs' FAC, D.E. 25; Defendant's Answer, Affirmative Defenses, and Counterclaims, D.E. 50, and documents relied on therein or integral thereto. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that a district court may consider a "document *integral to or explicitly relied upon* in" the pleading in reviewing a motion to dismiss that pleading) (emphasis in original). Defendant's Answer, Affirmative Defenses, and Counterclaims are set forth in a series of numbered paragraphs. The series restarts at the beginning of Defendant's affirmative defenses and at the beginning of Defendant's counterclaims. For the sake of clarity, the Court therefore cites to the Answer ("Ans.") or Counterclaims ("CC"), as applicable, followed by the page number and the paragraph number.

maintained a two-layer structure, while allegedly copying certain elements of Medline's ERASE CAUTI product. CC at 35 ¶ 21. In 2014, Bard began "selling a copycat single-layer" Foley catheterization kit called SureStep. CC at 35 ¶ 22.

Based on Bard's single-layer SureStep kit, Medline filed a patent infringement suit against Bard in the Northern District of Illinois in 2014. CC at 35 ¶ 23, Ans. at 7 ¶ 30. Medline then filed additional, related patent infringement suits against Bard in the Northern District of Illinois in 2016 and 2017 as well as in the Northern District of Georgia in 2020. CC at 35 ¶ 23, Ans. at 7 ¶ 30. In 2021, Bard began to sell a two-layer Foley catheterization kit called SureStep 1.1, which Medline asserts "appears to have been designed to attempt to avoid practicing the claims of Medline's patents." CC at 35 ¶ 24. Medline's assertion is based on Bard's representation to a court[3] that it would "no longer sell any single-layer SureStep trays upon the exhaustion of existing inventory." CC at 35 ¶ 24. The SureStep 1.1 was "met with negative customer reactions and had quality issues," resulting in a recall in August 2021. CC at 35 ¶ 24.

Medline alleges that Plaintiffs have employed unfair and misleading tactics while competing against Medline for Foley catheter products. CC at 36 ¶ 25. As a result, Plaintiffs have harmed Medline's brand and reputation, and "unfairly caused Medline's customers and potential customers . . . to choose Bard Foley catheter products over competing Medline Foley catheter products," resulting in lost sales. CC at 42-43 ¶¶ 51-54. As alleged, it appears that Plaintiffs' false and/or misleading statements or omissions pertain to four topics. First, Medline asserts that

---

[3] *See* CC at 35-36 ¶ 24 (citing *Medline, LP v. C.R. Bard, Inc.*, No. 1:17-cv-07216 (N.D. Ill.) ("Medline III").

Plaintiffs have presented false or misleading information about supposed cuffing issues[4] with Medline's Foley catheters, including a misleading bar graph. CC at 36-37 ¶¶ 26-28. Medline explains that the bar graph is false and misleading because (1) it does not explain how the underlying simulation was conducted; (2) the simulation conditions likely were not representative of real-life conditions (because the graph indicates results after 14 days and Foley catheters "are not typically left in place for anywhere near 14 days"); and (3) it suggests that 100% of Medline's Silicone Elastomer catheters experienced cuffing. CC at 37 ¶ 28. Second, Medline asserts that Plaintiffs have falsely and misleadingly suggested to customers and potential customers that Medline's silver-coated Foley catheters lack a necessary or important FDA approval for use of the device, when Medline merely lacks approval *to make a marketing claim* that these catheters help prevent CAUTI. CC at 38 ¶ 33. Medline explains that in the mid-1990s, Bard obtained FDA approval for a marketing claim that its silver-coated Foley catheters help prevent CAUTI and that Bard continues to assert this claim today. CC at 38 ¶ 31. However, by the time that Medline began to offer its current silver-coated Foley catheter products, the FDA ceased granting approval for such a marketing claim, preventing Medline from making this claim regardless of accuracy. CC at 38 ¶ 32. Third, Medline asserts that Plaintiffs represent that there have been no confirmed latex allergic reactions to Bard's Foley catheters despite reports to the contrary. CC at 39 ¶¶ 35-36. Finally, Medline alleges that Bard intentionally concealed from customers its plan to replace single-layer SureStep Foley catheterization kits with dual-layer SureStep 1.1 kits, making it more likely that customers would purchase Bard's dual-layer SureStep 1.1 kits instead of switching to Medline's single-layer ERASE CAUTI kits. CC at 40-42 ¶¶ 42-49. Medline contends that

---

[4] Medline explains that "cuffing" of a catheter balloon occurs when, during deflation of the balloon, a region of the balloon folds, forming a "cuff," which "may cause difficulty in the removing of the catheter even after complete deflation of the balloon." CC at 36 ¶ 26.

4

"customers who had been purchasing the single-layer SureStep kits for the benefits of their single-layer design" would have preferred Medline's single-layer kits over Bard's dual-layer kits if they had been properly informed. CC at 42 ¶ 49.

## II.   PROCEDURAL HISTORY

Plaintiffs initiated the instant suit on June 23, 2021, asserting claims for false advertising under the Lanham Act and New Jersey law, as well as breach of contract claims related to the Agreement. D.E. 1. Medline responded with a motion to dismiss or transfer. D.E. 21. Plaintiffs subsequently filed its FAC, D.E. 25, which rendered Medline's motion moot, D.E. 34. Medline then filed a motion to dismiss the FAC or transfer the matter to the Northern District of Illinois. D.E. 27. The Court granted Medline's motion to dismiss as to Count VII of the FAC but otherwise denied the motion. D.E. 37. On June 30, 2022, Medline answered Plaintiffs' FAC, and asserted the following counterclaims: (1) Counts 1 through 3, unfair competition claims pursuant to the Lanham Act, New Jersey statutory law, and common law, respectively; (2) Count 4, trade libel; and (3) Count 5, tortious interference with prospective economic advantage. D.E. 50. The instant motion followed. D.E. 67.

## III.   LAW AND ANALYSIS

Plaintiffs first argue that Medline "bargained away its right to convert any of Plaintiffs' customers for Foley catheter trays to Medline-branded trays in the Distributor Agreement," and that consequently, each counterclaim fails. Plfs. Br. at 5-8. Plaintiffs also assert that Medline's claim for tortious interference with prospective economic advantage fails because Medline did not have a reasonable expectation of economic benefit with respect to sales of its Foley catheter trays to Plaintiffs' customers nor did Plaintiffs have knowledge of Medline's alleged expectancy. Plfs. Br. at 6, 8-9. The Court addresses each argument in turn.

Rule 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a motion to dismiss a complaint." *RBC Bank (USA) v. Petrozzini*, No. 12-155, 2012 WL 1965370, at *2 (D.N.J. May 31, 2012) (citations omitted); *see also County of Hudson v. Janiszewski*, 351 F. App'x 662, 667-68 (3d Cir. 2009). To withstand a Rule 12(b)(6) motion to dismiss, a counterclaim must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A counterclaim has such plausibility when the defendant "pleads factual content that allows the court to draw the reasonable inference that the [plaintiff] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a [plaintiff] has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted).

In evaluating the sufficiency of a counterclaim, district courts must separate the factual and legal elements. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). A court "must accept all of the [counterclaim's] well-pleaded facts as true" and give a defendant the benefit of all reasonable inferences flowing therefrom. *Id.* at 210. A court, however, does not credit labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. A court may also consider exhibits attached to the answer. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

### A. Distributor Agreement

Plaintiffs argue that dismissal of each counterclaim is warranted under the terms of the Agreement because Medline "bargained away its right to convert any of Plaintiffs' customers for

6

Foley catheter trays to Medline-branded trays in the Distributor Agreement." Plfs. Br. at 5-8.[5] As such, Plaintiffs assert that the harm alleged by Medline—that Plaintiffs' tactics caused Medline's customers and potential customers to choose Bard Foley catheter products over competing Medline products—is not legally cognizable. Plfs. Br. at 1, 6-7. The parties do not dispute that Medline must plead a legally cognizable harm resulting from Plaintiffs' alleged tactics to support a claim for unfair competition, trade libel, or tortious interference with prospective economic advantage. Plfs. Br. at 5-6. The issue is whether, under the Agreement, "Medline unambiguously relinquished any right to obtain the business of the customers identified in its Counterclaims." Plfs. Br. at 5.

In interpreting a contract, a court must determine the intention of the parties as revealed by the language in the agreement.[6] *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 65 (N.J. 2016) (citation omitted). The plain language of the contract is ordinarily the best indicator of the parties' intent. *Chubb Customs Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008) (citation omitted). In other words, unless an actual ambiguity in the contract exists, a court should not engage in a strained reading of the agreement to justify a different result than that which the parties bargained for. *Id.* (internal quotations and citations omitted). An ambiguity exists when a contract term is "susceptible to at least two reasonable alternative interpretations[.]" *Id.* (citation omitted).

---

[5] The premise of Plaintiffs' argument appears to be that despite Medline's references to its "customers and potential customers" in its counterclaims, the Court should infer that any customers identified by name in the counterclaims are Plaintiffs' customers based on Medline's failure to allege the contrary, Medline's allegations that it is "actively attempting to win" each of these customers, and Plaintiffs' communications with each of these customers. Plfs. Br. at 7-8, 8 n.4 (citing CC at 36, 38-39, 41 ¶¶ 27, 33, 37, 45, 47).

[6] The Agreement provides that it " ███████████████████████████████████████████ " FAC Ex. 1, ███ Accordingly, the Court applies New Jersey law.

7

To "discover the intention of the parties, and to determine whether a contract is ambiguous, courts may consider extrinsic evidence offered in support of conflicting interpretations." *Annese v. Bertoia Auctions & Appraisals, LLC*, No. A-2951-20, 2022 WL 1613144, at *4 (N.J. Super. Ct. App. Div. May 23, 2022) (citing *Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 347 (N.J. 2006)). Relevant evidence includes "an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." *Conway*, 901 A.2d at 347 (internal quotations and citation omitted). Where "the contested provisions fall in that gray area, dismissal or summary judgment is improper." *Seaport Inlet Marina, LLC v. Connell*, No. 17-1908, 2017 WL 3981128, at *6 (D.N.J. Sept. 11, 2017) (citations and internal quotation marks omitted); *see also Annese*, 2022 WL 1613144, at *4 ("Resolution of ambiguity, if found, is a fact issue.") (citations omitted).

Here, the parties focus on the provisions in ▮▮▮ of the Agreement, which address Medline's ▮▮▮▮▮▮▮▮▮ *See* FAC Ex. 1, ▮▮▮ provides, in relevant part, that Medline shall ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* ▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮

███ *id.* ███

Plaintiffs argue ███ together mean that Medline is '███' and is prohibited from ███ Plfs. Br. at 7 (citing FAC Ex. 1 ███). In other words, Plaintiffs' reading is that Medline cannot '███.' Plfs. Reply at 8.

Medline counters that the relevant provisions only govern Medline's ███ and do not constrain ordinary competition between Medline and Plaintiffs. Def. Opp. at 6-8. Medline contends that ███ apply only to each ███ or ███ so that ███ because the customer has not yet ███." Def. Opp. at 7. Medline continues that ███ Def. Opp. at 7. Medline further contends that ███ only applies to Medline's ███, not Medline's promotion of its own products or ███ Def. Opp. at 7-8.

Plaintiffs' respond that Medline incorrectly interprets ███ as applying to ███ orders, rather than ███ and argue that it is ███ Plfs. Reply at 3-4. Thus, Plaintiffs appear to suggest that if a customer previously

9

███████████████ a BD product at any time, that customer is deemed an ████████ ████████ such that Medline may no longer market its own products to the customer. Plfs. Reply at 4, 8. Plaintiffs also argue that cabining the ██████ requirements to Medline's promotion of BD products, but not its promotion of its own products, is an unreasonable interpretation and inconsistent with the other provisions in the Agreement. Plfs. Reply at 4-6.

In the Court's view, the plain terms of the Agreement are not as unambiguous as Plaintiffs suggest as to Medline's right (or lack thereof) to promote and sell its own Foley catheter products to customers who have previously requested or ordered Plaintiffs' products. To the contrary, the plain language of the Agreement does not address ordinary competition among the parties. At best, ██████ is ambiguous—although the Court finds persuasive Medline's argument that by entering into the Agreement, it did not agree in perpetuity to forego sales to a customer or customers of Plaintiffs. Certainly, the provisions of ██████ address Medline's inherent conflict of interest in its role as a distributor and supplier of a competitor's products. As a result, ████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████ *See* FAC Ex. 1 ██████████. But ██████ applies to ████████████████ and ████████████████ apply on an ████ , given their references to ██████ and instances in which ████████████ ████████████████ FAC Ex. 1 ████████. Thus, ██████ puts clear constraints on the manner in which Medline can compete with Plaintiffs. For example, as to the relevant products, ████████████████████████████████████████████████ ████████████████████████. And Plaintiffs were aware that Medline and Bard were, and remained in, competition for Foley catheter products when the 2018 Amendment was executed.

10

Indeed, the parties were engaged in related patent litigation at that time. *See* Def. Opp. at 3 (referencing the 2014, 2016, and 2017 patent infringement suits). Consequently, the Court cannot conclude at this stage, as a matter of law, that the Agreement prevented Medline from seeking customers who had purchased or requested Plaintiffs' products. As a result, Plaintiffs' motion to dismiss Medline's counterclaims is denied on these grounds.[7]

In light of this ruling, Plaintiffs' motion to dismiss Counts I through III (unfair competition) of the Counterclaims also fails because Plaintiffs' only argument in support is that Medline "relinquished any right to obtain the business of the customers identified in its Counterclaims" under the Agreement. Plfs. Br. at 5-6. For the same reason, Plaintiffs' argument as to Count IV (trade libel) falls short. *See* Plfs. Br. at 5-6 (arguing that the claim fails because under the terms of the Agreement, no "legally cognizable harm" exists).

### B. Tortious Interference with Prospective Economic Advantage (Count V)

Count V of the Counterclaims alleges that Plaintiffs' false and/or misleading statements and omissions regarding Medline's and Bard's Foley catheter products interfered with Medline's prospective sales to its existing and prospective customers. CC at 48-49 ¶¶ 88-93. Under New Jersey law, the following must be pled to establish such a claim:

> (1) a [counter-claim] plaintiff's reasonable expectation of economic benefit or advantage, (2) the [counter-claim] defendant's knowledge of that expectancy, (3) the [counter-claim] defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the [counter-claim] plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the [counter-claim] defendant's interference.

---

[7] Medline argues that even if the Court agrees with Plaintiffs' interpretation of the Agreement, the Agreement, as interpreted by Plaintiffs, would be either unenforceable or waived. Def. Opp. at 12-14. Because the Court does not agree with Plaintiffs' interpretation, the Court does not reach the merits of the parties' unenforceability and waiver arguments. *See* Def. Opp. at 12-14; Plfs. Reply at 9-12.

*Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d Cir.1992) (citing *Printing Mart–Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37 (N.J. 1989)).

Plaintiffs maintain that the count must be dismissed because in addition to failing to adequately allege harm (with which the Court disagrees for the reasons stated), Medline fails to plead the first and second elements: (1) that Medline had a reasonable expectation of economic advantage, and (2) that "Plaintiffs had any knowledge of Medline's expectation of economic benefit with respect to sales of Medline-branded Foley catheter trays as to any particular customer." Plfs. Br. at 6, 8-9; Plfs. Reply at 13. Plaintiffs continue that, given the Agreement, Plaintiffs "rightfully expected Medline . . . ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Plfs. Br. at 9. Medline responds that its allegations reflect that Medline and Bard have been in competition for the same customers since at least 2009 and that Bard disseminated materials that expressly compare Medline's Foley catheters to Bard's. Def. Opp. at 14.

As to the first element, the Court finds that Medline sufficiently pleads that a prospective economic advantage or contract was lost. Medline's pleadings identify numerous customers by name that Medline "has been actively attempting to win for Foley catheterization kits." *See, e.g.*, CC ¶¶ 33-34, 37-38, 47-48. By comparison, in *Novartis Pharm. Corp. v. Bausch & Lomb, Inc.*, the plaintiff's claim was dismissed because it failed to "identify one physician, company, or other entity, with whom it currently d[id] business, or ha[d] the reasonable expectation of doing business in the future," and merely alleged interference with its future ability to sell products to an "undefined and indefinite group[.]" No. 07-5945, 2008 WL 4911868, at *7 (D.N.J. Nov. 13, 2008).

12

As to the second element, the Court agrees with Medline that, taking the well-pleaded facts as true, the allegations pertaining to (1) the ongoing competition between Medline and Bard; and (2) the false and/or misleading statements or omissions allegedly made with respect to Medline's Foley catheters (in particular, the express comparisons that Plaintiffs allegedly made between Bard and Medline catheter products in its marketing materials), support the reasonable inference that Plaintiffs knew of Medline's expectancy as to these products. Plaintiffs rely on *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 420-22 (D.N.J. 2016) and *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 256 F. Supp. 2d 249, 288-89 (D.N.J. 2003). *See* Plfs. Br. at 9. The cases are distinguishable. Both *Baxter* and *Carpet* were decided at the summary judgment stage. In *Baxter*, the court found that a reasonable factfinder could not conclude that the defendant had knowledge of its employee's obligations to the plaintiff under his severance agreement, and thus could not find intent to interfere with the plaintiff's business relationships. *Baxter Healthcare Corp.*, 157 F. Supp. at 421-22. In *Carpet*, the court found that there was no admissible evidence to support the plaintiff's position that the defendants were aware of, and willfully interfered with, the plaintiff's alleged business expectations and contracts. *Carpet Group Int'l*, 256 F. Supp. 288-89. Here, the allegations, when viewed in the light most favorable to Medline, allow the court to reasonably infer that Plaintiffs knew of Medline's expectancy as to the sale of its catheter kits to certain customers.

Thus, Count V is not dismissed.

### IV. CONCLUSION

For the reasons stated above, and for good cause shown,

**IT IS** on this 5 day of December, 2022,

**ORDERED** that Plaintiffs' motion to dismiss (D.E. 66) is **DENIED**; and it is further

13

**ORDERED** that because the Court considered documents that were filed under seal to decide the motion, the Opinion & Order shall initially be filed under seal. By December 12, 2022, the parties shall inform the Court, via a letter filed on the docket, if any portion of the Opinion & Order should remain under seal and the legal basis for doing so. If the Court does not receive any such submission, the Opinion & Order will be unsealed on December 13, 2022.

                                                             John Michael Vazquez, U.S.D.J.